COMMONWEALTH of Pennsylvania,
Appellee

v.

Bysheer RIGGS, Appellant.

Superior Court of Pennsylvania.

Submitted June 25, 2012.
Filed Sept. 6, 2012.

Edward C. Meehan, Jr., Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia and Mary L. Huber, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., GANTMAN, J., and OLSON, J.

OPINION BY STEVENS, P.J.

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County for an aggregate sentence of twelve (12) to thirty (30) years incarceration for Driving Under the Influence[1], Possession of Marijuana[2], three counts of Recklessly Endangering Another Person[3], three counts of Aggravated Assault[4], and three counts of Aggravated Assault by Vehicle While Driving Under the Influence.[5] Appellant raises two issues on appeal: 1) Appellant contends that the evidence presented at trial was insufficient to establish guilt beyond a reasonable doubt on any of the three counts of Aggravated Assault; 2) Appellant next argues that his sentence of 12 to 30 years was an abuse of the trial court's discretion. We affirm.

The facts of this case are as follows:

1. 75 Pa.C.S.A. § 3802(a)(1).

2. 35 Pa.S.A. § 780–113(a)(31).

3. 18 Pa.C.S.A. § 2705(a).

4. 18 Pa.C.S.A. § 2702(a).

5. 75 Pa.C.S.A. § 3735.1.

On January 24, 2011, at the conclusion of the non-jury trial, [Appellant] was found guilty by the Court on the above-recited charges. On June 15, 2011, [Appellant] was sentenced on each of the three counts of Aggravated Assault to a period of confinement of 4 to 10 years to be served at a state correctional institution. These sentences were to run consecutively for a total of 12 to 30 years. [Appellant] was sentenced on each of the three counts of DUI-related Aggravated Assault to 4 to 10 years each, to be served concurrent with the Aggravated Assault sentences. [Appellant] was sentenced on each of the three counts of Recklessly Endangering the Life of Another Person to a period of confinement of 1 to 2 years each, to be served concurrent with the Aggravated Assault sentences. [Appellant] was sentenced on the count of Driving Under the Influence (DUI) to a period of confinement of 1 to 6 months at a state correctional institution, to be served concurrent with the Aggravated Assault sentences. [Appellant] was sentenced on the count of Possession of Marijuana to a period of confinement of 30 days at a state correctional institution, to be served concurrent with the Aggravated Assault sentences.

Police Officer Dimitry Sokora testified that in the early morning of July 19, 2009, he and his partner, Officer Charles James, were stopped and doing paperwork at the intersection of Hutchinson Street and Bigler Street in Philadelphia. Officer Sokora "heard an engine rev loudly," and observed a "dark-colored Pontiac" traveling at a "high rate of speed" on Bigler towards the intersection of Bigler and 10th Street. Officer Sokora pulled out on Bigler Street, activated his lights, and followed the Pontiac towards the intersection of Bigler and 10th Street. Officer Sokora then ob-served the Pontiac continue through the red light at the intersection, "without any brake lights," and collide with "a vehicle that was traveling southbound on 10th Street." The vehicle spun around, ran over a fire hydrant, "knocked down a fence," and "ended up on the sidewalk ... resting on the fence." Officer Sokora testified that "two, three ambulances, as well as rescue equipment, Jaws of Life" were required to treat the occupants. Police Officer William Lackman, an expert witness in accident reconstruction, testified that [Appellant] could not have been traveling at a speed "less than 50 miles per hour" at the time of impact.

Officer Sokora testified that after the Pontiac came to rest, he observed the [Appellant] "reach out, [grab] the top of the driver's side window, pull himself out and run basically over the back of the vehicle." Officer Sokora identified [Appellant] from prior dealings with him. Officer James testified that he "jumped out of [his] car, [and] started chasing the [Appellant] through an alleyway." After Officer James lost sight of the [Appellant] for five or six minutes, he returned to the scene of the incident and sent out a description of the [Appellant] ("flash") over police radio.

Police Officer Raphael McGough testified that, upon arrival to the scene and receipt of the information, he recognized [Appellant's] name and knew "that the [Appellant] may be at a location that [he is] familiar with the [Appellant] being at, [an] address on South 8th." When Officer McGough arrived at the address, he observed the [Appellant] "sitting on a stoop." When Officer McGough walked toward him, [Appellant] tossed away a sandwich bag filled with a substance that "tested positive for marijuana." Officer McGough then apprehended [Ap-

pellant], transported him to the original scene of the accident, and "The officers that were originally on the job ... identified him as the person we were looking for." There was a stipulation between the parties that the "blood analysis conducted" on [Appellant] the night of the incident showed that "he did have marijuana in his system to an extent that would make him unable to drive safely."

The complaining witness, Ms. Gwendolyn Rabautino, testified that in the early morning of July 19, 2009, she and her thirteen-year-old daughter, Gianna Rabautino, were passengers in a Hyundai Accent driven by Mr. James Rosemann. They were stopped at a red light at 10th and Bigler Street in Philadelphia. Ms. Rabautino doesn't "remember anything after" being stopped at the red light. Ms. Rabautino's next memory is waking up at Jefferson Hospital, where she remained for "eight or nine days." She testified to numerous injuries, including a "dislocated shoulder, neck brace, back brace, fractured front tooth, [and] some scars. Ms. Rabautino testified that her daughter suffered broken legs, as well as a broken collar bone [and] two scars on her face."

The complaining witness, Mr. Rosemann, testified that he was the driver of the vehicle and only remembers "proceeding across the intersection and being impacted." He has no further memory until he woke up in the hospital sometime in November, at least three months after the incident. He testified that he suffered spinal fractures, broken ribs, pelvis fractures, and a broken femur as a result of the collision. All three victims underwent substantial physical therapy for their injuries, and both Ms. Rabautino and Mr. Rosemann were unable to keep their jobs due to the injuries suffered during the incident.

Police Officer David Burns testified that on June 23, 2009, approximately 11 months before the matter at hand, he and his partner pulled [Appellant] and a female over for a tinted window violation at the intersection of 5th Street and Oregon Avenue. The vehicle involved in that incident was the same "'97 Pontiac Grand Prix, green in color" involved in the instant matter. Police Officer Phillip Muscareno testified that on June 27, 2008, approximately 13 months before the matter at hand, when he "attempted to stop the vehicle" driven by [Appellant], [Appellant] "took off at a high rate of speed," disregarded red lights, and traveled four and a half blocks. The "vehicle slowed down and he fled on foot," in an attempt to evade police.

Police Officer John Palmiero testified that on March 13, 2008, approximately 16 months prior to the matter at hand, he followed a vehicle driven by [Appellant] as it sped through an intersection. After observing [Appellant] travel through a steady red light, Officer Palmiero activated his lights and sirens. [Appellant] then accelerated to a "very high rate of speed, about 100 miles per hour," then "lost control, began spinning out on residents' lawns, driving on the sidewalk attempting to regain control." Officer Palmiero testified further that the vehicle driven by [Appellant] disregarded "about three, four stop signs." After the vehicle crashed into a parked car, [Appellant] fled the police on foot before being arrested. Officer Tamika Reid testified that on January 9, 2008, approximately 18 months before the matter at hand, she activated both her lights and sirens in attempting to pull [Appellant] over after she observed him "disregard the stop sign at 49th Street and Osage." [Appellant] did not stop, but instead proceeded northbound on 49th Street, "disregarded a red light at

49th and Spruce," and failed to stop at a stop sign before being pulled over by Officer Reid. At that point, "both the operator and the passenger exited the vehicle and began to flee."

On June 20, 2011, [Appellant] timely filed a Motion for Post Sentence Relief pursuant to the Pennsylvania Rules of Criminal Procedure, Pa.R.Crim.P. 720(A)(1) and Pa.R.Crim.P. 720(B)(1)(a)(ii) and (iv), requesting the court to reconsider [Appellant's] sentence. By Order dated July 5, 2011, the court denied [Appellant's] motion.

On July 25, 2011, [Appellant] timely filed the instant appeal to the Superior Court of Pennsylvania. On August 1, 2011, this court filed and served an Order on [Appellant], pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, directing [Appellant] to file a Statement of Errors Complained of on Appeal in this matter within twenty-one days of the court's Order. [Appellant] requested an extension due to the unavailability of the complete trial notes of testimony. On August 29, 2011, the complete trial notes of testimony became available. On September 12, 2011, [Appellant] filed his Statement of Errors Complained of on Appeal.

Trial Court Opinion, 12/1/11 (internal citations omitted).

Instantly, Appellant contends that the facts were insufficient as a matter of law to establish the *mens rea* for aggravated assault. We have no difficulty concluding that the record establishes malice necessary for an aggravated assault conviction.

The standard for evaluating sufficiency claims is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable a fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943–944 (Pa.Super.2011).[6]

As this Court has summarized:

A person is guilty of aggravated assault, graded as a felony of the first degree, "if he attempted to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S.A. § 2702(a)(1). To prevail on a theory of recklessness in a

**6.** We note that in his brief, Appellant improperly instructs this Court to view the evidence in the light most favorable to the Appellant, and to draw every inference in his favor. Appellant's Brief at 15.

prosecution for aggravated assault, the Commonwealth must show that the assailant's recklessness rose to the level of malice, a crucial element of aggravated assault. Malice consists of a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty, although a particular person may not be intended to be injured. Motor vehicle crashes seldom result in an aggravated assault conviction because of the heightened *mens rea.* However, in some circumstances the malice requirement has been met, and this court has not hesitated to uphold an aggravated assault or a third degree murder charge depending on the particular facts of a motor vehicle crash.

*Commonwealth v. Miller,* 955 A.2d 419, 420 (Pa.Super.2008) (internal citations omitted). This Court additionally concluded that "a motorist's conduct is more egregious if he does not apply his breaks or attempt to slow down before a collision than if he attempts to flee." *Id.* Finally, the Court found that the fact that appellant ran from the scene helps to further illustrate evidence of sustained recklessness. *Id.*

█ Appellant also argues that he did not act with the necessary *mens rea* to be convicted of aggravated assault. Appellant contends that the Commonwealth failed to provide evidence of "sustained recklessness." We disagree.

Taken as a whole, the record clearly established a "sustained recklessness" element to his conduct. During the trial, the prosecution introduced 404(b) evidence to demonstrate Appellant's prior conduct, in order to support a charge of sustained recklessness. These prior encounters with the police support the conclusion that Appellant was well aware of the risk he was creating by recklessly driving that day.

Appellant had previously been involved in three high speed police chases, each time abandoning his car and fleeing on foot. Officers testified that during each of these incidents, Appellant disregarded red lights and stop signs. Additionally, Appellant crashed into a parked car during one of the chases. This evidence clearly supports the conclusion that Appellant was aware of the risks involved in reckless driving.

Appellant's actions immediately prior to the accident also support his convictions for aggravated assault. Officers Sokora and James both testified that Appellant's brake lights did not illuminate before he ran a red light and hit Mr. Rosemann's car. As this Court found in *Miller,* Appellant's failure to brake adds to the egregious nature of the crime.

Appellant's actions immediately following the accident also support his conviction. After the collision, Appellant climbed out of the automobile and fled on foot, leaving both of his passengers and the occupant of the other car behind. When police caught up with Appellant, he was on his stoop holding a bag of marijuana, clearly indifferent as to what had just occurred. As stated in *Miller,* an appellant's flight from a scene can further illustrate evidence of sustained recklessness.

The aforementioned reasons coupled with Appellant's blood analysis from the night in question, which showed that Appellant had enough marijuana in his system to make him unable to drive safely, clearly produce evidence sufficient to sustain his conviction.

Appellant next contends that the sentence of twelve (12) to thirty (30) years is excessive and manifestly unreasonable. Appellant maintains that the trial court imposed the sentence based upon the injuries suffered by the complaining witnesses

and failed to take into account all relevant sentencing criteria. We disagree.

This Court has held that there is no absolute right to appeal when challenging the discretionary aspect of sentencing. *Commonwealth v. Ahmad*, 961 A.2d 884, 886 (Pa.Super.2008) (citing *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa.Super.2004)). In order for such an appeal to be valid, an appellant's brief must contain a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of the sentence and must also show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. *Ahmad*, 961 A.2d at 886 (citing *McAfee*, 849 A.2d at 274). In order to raise a substantial question, an appellant's Pa. R.A.P. 2119(f) statement must argue the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process. *Commonwealth v. Mouzon*, 571 Pa. 419, 435, 812 A.2d 617, 628 (2002).

Appellant's 2119(f) statement does, in fact, raise a substantial question that the sentence imposed violates a fundamental norm underlying the sentencing process. In his 2119(f) statement, Appellant argues that the trial court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of Appellant, as 42 PA.C.S.A § 9721(b) requires, and instead focused on the injuries suffered by the complaining victims.

The sentencing court is given broad discretion in determining whether a sentence is manifestly excessive because the sentencing judge is in the "best position to measure factors such as the nature of the crime, the defendant's character and the defendant's display of remorse, defiance, or indifference." *Commonwealth v. Andrews*, 720 A.2d 764, 768 (Pa.Super.1998) (quoting *Commonwealth v. Ellis*, 700 A.2d 948, 958 (Pa.Super.1997)). In order to find that a trial court imposed an "unreasonable" sentence, we must determine that the sentencing court imposed the sentence irrationally and that the court was "not guided by sound judgment." *Commonwealth v. Walls*, 592 Pa. 557, 564, 926 A.2d 957, 961 (2007).

The sentencing code offers general guidelines with respect to the imposition of a particular sentence. Reasonableness of the sentence imposed by the trial court is based on:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d). The sentencing code guidelines also require the sentence to be "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." *Ahmad*, 961 A.2d at 888 (citing 42 Pa.C.S.A. § 9721(b)).

After reviewing the transcript of Appellant's sentencing proceeding, we find that the trial court imposed a sentence that was consistent with the protection of the public, took into account the impact the crime had on the victims, and considered

the rehabilitative needs of Appellant as required by 42 Pa.C.S.A. § 9721(b).

We first note that Appellant concedes that the sentence imposed is within the statutory limits for each conviction. Aggravated assault is graded as a "felony of the first degree." 18 Pa.C.S.A. § 1103 provides in part that "A person who has been convicted of a felony may be sentenced to imprisonment as follows: (1) In a case of a felony of the first degree, for a term that shall be fixed by the court at not more than 20 years." 18 Pa.C.S.A. § 1103(1). Appellant's sentences of 4 to 10 years for each aggravated assault conviction is therefore legal.

Appellant argues that the court did not adequately take into consideration all relevant sentencing criteria. After reviewing the transcript from the Sentencing Hearing, we find that the trial court did not abuse its discretion in imposing a sentence of 12 to 30 years. The judge clearly states that he read the reports submitted, listened to the arguments of counsel and considered the seriousness of the crimes. Further, the court reviewed Appellant's Pre–Sentence Investigation Report prior to sentencing. N.T. 6/15/11 at 18. The court also noted that Appellant "will still have his adult life ahead of him." N.T. 6/15/11. The trial judge further took note of the extreme harm done by Appellant. Because of Appellant's actions of sustained recklessness, three victims were left severely injured; one remaining comatose for three months. We are satisfied that the sentence of 12 to 30 years is not manifestly excessive and that the trial judge properly took into account all of the necessary sentencing criteria.

For the aforementioned reasons, we find that the Commonwealth provided sufficient evidence to sustain a conviction of Aggravated Assault. We further find that the trial court did not abuse its discretion in imposing a sentence of 12 to 30 years incarceration.

Judgment Affirmed.