J-S76036-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DENNIS M. SCHELL, | |
| Appellant | No. 1222 WDA 2014 |

Appeal from the Judgment of Sentence of March 18, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0014569-2011, CP-02-CR-0014570-
2011, CP-02-CR-0014572-2011

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA AND OLSON, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 13, 2015**

Appellant, Dennis M. Schell, appeals from the judgment of sentence entered on March 18, 2013, as made final by the denial of Appellant's post-sentence motion on July 23, 2014.  We affirm.

On December 13, 2012, Appellant entered an open guilty plea to four counts of robbery under 18 Pa.C.S.A. § 3701(a)(1)(ii)[1] and one count of robbery under 18 Pa.C.S.A. § 3701(a)(1)(vi).[2]  During the guilty plea colloquy, the Commonwealth outlined the factual basis for the plea:

---

[1] Robbery under Section 3701(a)(1)(ii) is defined as follows:  "A person is guilty of robbery if, in the course of committing a theft, he . . . threatens another with or intentionally puts him in fear of immediate serious bodily injury."  18 Pa.C.S.A. § 3701(a)(1)(ii).

[2] Robbery under Section 3701(a)(1)(vi) is defined as follows:  "A person is guilty of robbery if, in the course of committing a theft, he . . . takes or

*(Footnote Continued Next Page)*

At [docket number CP-02-CR-0014570-2011 (hereinafter "the 570 case"),] the testimony would have been that . . [o]n October 27, 2011[,] at [9:00 a.m., Appellant] entered [] the First Commonwealth Bank located at 4900 Liberty Avenue [in Pittsburgh]. He approached [M.K.] at the bank and told him he had a gun and indicated that he would shoot him if he did not give him the money. At this point[,] they handed over in the bank $9,551[.00] to [Appellant]. He was subsequently identified by [M.K.] – I'm sorry, [by M.S.] – positively identified him in a photo array.

At [docket number CP-02-CR-0014569-2011 (hereinafter "the 569 case"),] the testimony would have been that on October 29[, 2011,] at 11:15 a.m., [Appellant] entered the Citizens Bank at 837 Freeport Road in Allegheny County; [M.K.] was working the window. He approached him and indicated he had a gun and he would use it and he asked for the fifties and hundreds. During the robbery[, J.M.] heard the demands by [Appellant] and went to push the panic button. [Appellant] in turn turned towards [J.M.] and said don't touch that button. He grabbed the money and walked out of the bank taking with him $2,977[.00]. He was subsequently identified from a photo array by the individuals in the bank.

[At docket number CP-02-CR-0014572-2011 (hereinafter "the 572 case"), the testimony would have been that, o]n October 31, 2011[,] at 11:30 [a.m., Appellant] went back to the First Commonwealth Bank at 4900 Liberty Avenue. At this point he approached [M.S.], being [the] bank manager. He indicated that he should sit down at his desk and he told him it was a robbery, he had a gun and I will start shooting if you don't give me the money. [M.S.] then went to [Mr. P.,] a bank teller, and told him to give him the money. They give him $10,000[.00]. [Appellant] indicated

*(Footnote Continued)* _____

removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof." 18 Pa.C.S.A. § 3701(a)(1)(vi).

that's not filling the f'ing bag. He at that point obtained $58,000[.00] from the bank. He left the bank and he had the money in his arms.

The bank security officers who also would identify him along with these two tellers and the manager, followed him to a residence where he was staying. Police arrived[,] surround[ed] the residence[,] and were able to place [Appellant] under arrest and to get that $58,000[.00] back.

N.T. Guilty Plea Hearing, 12/13/12, at 5-7.

The trial court accepted Appellant's guilty plea and deferred sentencing, pending Appellant's pre-sentence report and psychiatric evaluation.

Appellant's sentencing hearing took place on March 18, 2013. As the trial court noted during the sentencing hearing, Appellant's psychiatric evaluation revealed that Appellant suffers from "a number of health issues," including schizophrenia. N.T. Sentencing, 3/18/13, at 2. Further, during the hearing, Appellant testified: that he suffers from schizophrenia; that he takes "numerous medications" for his mental and physical health problems; that, prior to his string of robberies, he was forced to take the drug clonazepam; that the clonazepam caused him to "go crazy" and lose consciousness; that he was on clonazepam at the time of the robberies; and, that, as a result of the clonazepam, he did not remember committing the robberies. *Id.* at 2-6.

The trial court noted Appellant's mental and physical health problems. Nevertheless, at each of the three docket numbers, the trial court sentenced Appellant to serve a term of five to ten years in prison, and the trial court

ordered that Appellant serve the three sentences consecutively.[3, 4]  Thus, the trial court sentenced Appellant to serve an aggregate term of 15 to 30 years in prison.

During the sentencing hearing, the trial court explained the reasons it sentenced Appellant to serve an aggregate term of 15 to 30 years in prison:

> [Appellant] has poor physical health and poor mental health.  However, he seems to be able to overcome all of this adversity in order to rob banks.[5]
>
> [Appellant] . . . has had incarceration in the jail, he has had halfway houses, he's had electronic monitoring.  And he still . . . went out and committed three robberies.  He may or may not have had a gun, we don't know.  No one saw it.  But he claimed to have a gun, and he threatened to kill these people.
>
> I mean, I just can't overlook the behavior of someone who in the standard range is looking at 120 months, which is the maximum sentence.  I mean, it is enough.
>
> . . .

---

[3] The trial court sentenced Appellant to serve terms of five to ten years in prison for three of Appellant's five robbery convictions.  The trial court imposed no further penalty for the remaining two robbery convictions.  **See** Order of Sentence, 3/18/13, at 1.

[4] Appellant acknowledges that each of his sentences were in the standard range of our sentencing guidelines.  Appellant's Brief at 12; **see also** Guideline Sentence Form, 3/18/13, at 1.

[5] During sentencing, the trial court noted that Appellant has ten prior convictions, seven of which are for robbery.  N.T. Sentencing, 3/18/13, at 5.  Moreover, Appellant admitted that he has committed "a number of bank robberies" in the past.  **Id.** at 6-7.

[T]here is a huge gap between incarceration and mental health. And if I could sentence [Appellant] to a mental health facility for 15 years I would be more than happy to do it. I[,] however, don't have that ability.

Now, I do know that the state correctional institution of Wymer has a mental health program, and does take state prisoners. And I will make a recommendation that's where [Appellant] do his incarceration, after he is classified at Camp Hill.

But for the reasons I have already stated, I see [Appellant] not rehabilitating himself, for whatever reason.

I mean, you know, clearly if it was – I just have to balance what's going on for the rest of the world against what's going on in [Appellant's] life. And I am sorry that there is no place to put him. I think he does need inpatient mental health treatment, but don't believe he will go or take advantage of it.

N.T. Sentencing, 3/18/13, at 9-12.

Following sentencing, Appellant did not file a timely post-sentence motion or notice of appeal.

On September 5, 2013, Appellant filed a *pro se* "Petition for Reconsideration of Sentence" in the lower court. The lower court treated the petition as a first petition under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. The lower court thus appointed counsel to represent Appellant.

On July 10, 2014, counsel filed an amended PCRA petition, claiming that Appellant's plea counsel was ineffective for failing to file a post-sentence motion. On July 14, 2014, the PCRA court granted Appellant's PCRA petition and reinstated Appellant's post-sentence rights *nunc pro tunc*.

Appellant then filed a timely post-sentence motion, claiming that the trial court abused its discretion when it ran his three sentences consecutively. As Appellant claimed, his aggregate sentence of 15 to 30 years in prison was manifestly excessive because his "crimes were occasioned by his mental illness and negative reactions to prescribed drugs" and because "warehousing [Appellant] for 15 [to] 30 years in the state prison system will not improve his mental health, and will likely cause it to deteriorate further." Appellant's Post-Sentence Motion, 7/17/14, at 5.

The trial court denied Appellant's post-sentence motion on July 28, 2014 and Appellant filed a timely notice of appeal. Appellant raises the following claim on appeal:

> Did the trial court err in denying Appellant's [post-sentence] motion[] since the trial court erred in sentencing Appellant since Appellant's aggregate sentence of 15-30 years' imprisonment was manifestly excessive since Appellant's crimes were occasioned by his mental illness and negative reactions to prescribed medications. While each 5-10 year sentence for each robbery was not improper, the sentences could have been run concurrently, since warehousing Appellant for 15-30 years in the state prison system will not improve his mental health, and will likely cause it to deteriorate further?

Appellant's Brief at 3.

Appellant challenges the discretionary aspects of his sentence. "[S]entencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion." *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa. Super. 2001).

Moreover, pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court has explained:

> [t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [42 Pa.C.S.A.] § 9781(b).

*Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007).

In the case at bar, Appellant satisfied the first three requirements, as he filed a timely notice of appeal, properly preserved his discretionary challenge in a post-sentence motion, and facially complied with Pennsylvania Rule of Appellate Procedure 2119(f). We must now determine whether Appellant has presented a "substantial question that the sentence appealed from is not appropriate under the Sentencing Code." *Cook*, 941 A.2d at 11.

Generally, to raise a substantial question, an appellant must "advance a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. McKiel*, 629 A.2d 1012, 1013 (Pa. Super. 1993);

***Commonwealth v. Goggins***, 748 A.2d 721, 726 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000). Moreover, in determining whether an appellant has raised a substantial question, we must limit our review to Appellant's Rule 2119(f) statement. ***Goggins***, 748 A.2d at 726. This limitation ensures that our inquiry remains "focus[ed] on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." ***Id.*** at 727 (internal emphasis omitted).

In his Rule 2119(f) statement, Appellant acknowledges that his three sentences all fell within the standard range of our sentencing guidelines. Appellant's Brief at 12. However, Appellant claims that his aggregate sentence of 15 to 30 years in prison was manifestly excessive because his crimes were occasioned by "his mental illness and a negative reaction to prescription medication" and because "warehousing [Appellant] in the state prison system for 15 [to] 30 years will do nothing to address his mental illness or rehabilitative needs." ***Id.*** at 12-13.

In essence, Appellant claims that, even though "the sentencing court sentenced [Appellant] within the sentencing guidelines[,] . . . the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2); ***Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa. Super. 2013) (hereinafter "***Dodge IV***") (recognizing the distinction between "a bald claim of excessiveness due to

the consecutive nature of a sentence" and a claim that the court erred in imposing consecutive sentences within the guidelines ranges because "the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence").

Appellant first claims that, at sentencing, the trial court failed to adequately consider the possibility that his crimes were occasioned by "his mental illness and a negative reaction to prescription medication." Appellant's Brief at 12-13. According to Appellant, by failing to fully appreciate these two mitigating factors, the trial court imposed a manifestly excessive aggregate sentence under the circumstances.

Appellant's first claim does not raise a substantial question under the Sentencing Code. **See Commonwealth v. McNabb**, 819 A.2d 54, 57 (Pa. Super. 2003) ("an allegation that the sentencing court did not consider certain mitigating factors does not raise a substantial question"); **see Commonwealth v. Dunphy**, 20 A.3d 1215, 1222 (Pa. Super. 2011) ("[a]n allegation that the sentencing court 'failed to consider' or 'did not adequately consider' various factors does not raise a substantial question that the sentence was inappropriate"), *quoting* **McKiel**, 629 A.2d at 1013; **see also Commonwealth v. Felmlee**, 828 A.2d 1105, 1106 (Pa. Super. 2003) (a claim that the trial court "erred by imposing an **aggravated range** sentence without consideration of mitigating circumstances raises a substantial

question") (emphasis added). Therefore, we may not reach the merits of Appellant's first claim.

Appellant also claims that his aggregate sentence is manifestly excessive because "warehousing [Appellant] in the state prison system for 15 [to] 30 years will do nothing to address his mental illness or rehabilitative needs." Appellant's Brief at 12-13. As this Court has held, a claim that the trial court failed to consider the rehabilitative needs of a defendant does raise a substantial question under the Sentencing Code. *Dodge IV*, 77 A.3d at 1273 ("we find that Appellant's claim that the sentencing court disregarded rehabilitation and the nature and circumstances of the offense in handing down its [consecutive, standard range] sentence presents a substantial question for our review"); *see also Commonwealth v. Riggs*, 63 A.3d 780, 786 (Pa. Super. 2013) (a claim that the trial court "failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs" of the defendant raised a substantial question). Therefore, we may reach the merits of Appellant's claim that, at sentencing, the trial court failed to consider Appellant's rehabilitative needs.

However, Appellant's claim on appeal immediately fails on its merits, as the trial court undoubtedly considered Appellant's rehabilitative needs when it imposed Appellant's sentence. Certainly, during sentencing, the trial court spoke at length regarding Appellant's need for mental health treatment

and rehabilitation, but the trial court reasoned that, for the protection of the public, it was required to place Appellant in prison for a significant period of time. Nevertheless, the trial court informed Appellant:

> I do know that the state correctional institution of Wymer has a mental health program, and does take state prisoners. And I will make a recommendation that's where [Appellant] do his incarceration, after he is classified at Camp Hill.

N.T. Sentencing, 3/18/13, at 11.

From the above, it is apparent that the trial court expressly considered Appellant's rehabilitative needs at sentencing. Appellant's claim to the contrary is factually baseless; thus, the claim fails on its merits.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2015

- 11 -