J-A03044-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ARNOLD BELL | : | |
| | : | |
| Appellant | : | No. 536 EDA 2021 |

Appeal from the Judgment of Sentence Entered October 22, 2020
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0003916-2019

BEFORE: STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED FEBRUARY 17, 2022**

Arnold Bell (Appellant) appeals from the judgment of sentence imposed on October 22, 2020, in the Lehigh County Court of Common Pleas following his jury conviction of two counts each of aggravated assault, simple assault, and recklessly endangering another person (REAP).[1] Appellant's sole issue on appeal is a challenge to the sufficiency of the evidence supporting his convictions of aggravated assault. We affirm.

On July 15, 2019, Appellant was charged with the aforementioned offenses following an incident at his home earlier that day when the two victims, Donte Dennis[2] and Rodney Walker, suffered chemical burns. The case

_____

[1] 18 Pa.C.S. §§ 2702(a)(1), 2701(a)(1), and 2705, respectively.

[2] Throughout the trial, Dennis was also referred to as "Abigail Walker," the name provided to police. *See* Trial Ct. Op., 4/22/21, at 1 n.1. We, like the trial court, will refer to the individual as Dennis. *Id.*

proceeded to a jury trial commencing on August 17, 2020, during which Appellant was represented by a public defender. The testimony presented during Appellant's trial is aptly summarized by the trial court as follows:

On July 15, 2019, Donte Dennis was staying with Appellant at Appellant's residence located [on] North Sherman Street, Allentown, Lehigh County, Pennsylvania. Dennis and Appellant met online in approximately 2017-2018 and developed a friendship. In October of 2018, Dennis moved in with Appellant. Dennis testified that on July 14, 2019, Rodney Walker, Dennis' paramour, had attended a gathering with Dennis, Appellant, and other individuals at Appellant's house. Dennis testified that Appellant generally got along with Walker. Dennis believed Walker felt Dennis' friendship with Appellant detracted from the time Dennis spent with Walker.

Walker stayed at Appellant's residence after the gathering. During the evening hours of July 14, 2019 into July 15, 2019, Walker and Dennis got into an ongoing argument that lasted much of the night. At approximately 2:00 a.m. on July 15, 2019, Appellant approached Dennis and said that Walker had to go. Dennis testified that Walker was "rude" to Appellant and got into a verbal altercation with him. At some point during this dispute, Appellant directed Dennis to move and threw a cup of paint stripper at Walker, which also struck Dennis.

Appellant testified in his own defense at trial and described this incident. He explained he viewed his apartment as a safe zone for Dennis. Appellant explained that on the evening of the incident, Dennis and Walker were on the third-floor attic area of Appellant's apartment having an argument. Appellant was asleep at about 2:00 a.m. or 3:00 a.m. on July 15, 2019 when he was awakened by a loud commotion. Appellant testified that Walker was carrying on, so he told Walker that he had 15 minutes to leave the residence.

After Appellant instructed Walker to leave, Appellant testified that Walker began coming toward him. In picking up his belongings, Walker knocked over a mug containing paint stripper that Appellant was using for a project. Appellant picked up the container and was holding it. Appellant testified that Walker attempted to strike punch him, which caused the mug to fly out

of Appellant's hands and sent paint stripper into a nearby fan. This allegedly caused the paint stripper to splatter "everywhere," including on Appellant's arms. The paint stripper also landed on both Dennis and Walker. Neighbors heard the noise at this time and began knocking on Appellant's door and Appellant, Dennis, and Walker believed they were going to call the police. Dennis and Appellant attempted to rinse the paint stripper off of themselves. Walker was trying to leave the residence.

Walker also testified about the incident at trial. Walker indicated that Appellant yelled at both him and Dennis prior to the incident. Walker testified that Appellant threw the paint stripper at him while he was walking down the stairs to get away from his confrontation with Appellant. The paint stripper was on the back of Walker's shoulder, on his neck, and partially on his forearm. Walker denied seeing Appellant throw the mug at him. Walker and Dennis subsequently left Appellant's residence and proceeded to Sacred Heart Hospital.

Office[r] Theodore Kiskeravage of the Allentown Police Department testified that on July 15, 2019, at approximately 2:30 a.m., he was working in the early-morning hours when he heard a call go out over the radio for a report of individuals who had acid thrown on them. At approximately 3:30 a.m., a second call went out indicating people had shown up at Sacred Heart Hospital who had acid thrown on them. Officer Kiskeravage proceeded to Sacred Heart and encounter[ed] Dennis, who self-identified as Abigail Walker. Officer Kiskeravage observed what appeared to be chemical burns on Dennis' neck, right arm, and back. He also observed Rodney Walker, who appeared to have more severe chemical burns on his neck, right arm, flank, and back. Officer Kiskeravage took pictures of the burns, which were admitted into evidence as Commonwealth's Exhibits 1-5. Walker and Dennis were subsequently transported to Lehigh Valley Hospital's Burn Unit, which was better equipped to treat chemical burns than Sacred Heart Hospital.

While at Sacred Heart Hospital, Officer Kiskeravage interviewed Dennis and Walker. He learned that the incident had occurred at . . . Appellant's address, and that the suspect was Appellant. Officer Kiskeravage also ascertained that Appellant had a history of using and possibly cooking methamphetamines, so prior to obtaining a search warrant and an arrest warrant, Allentown Police Department contacted the Clandestine Lab Team

from the Pennsylvania State Police to become involved due to the suspected presence of toxic and corrosive chemicals.

At approximately 3:00 p.m. on July 15, 2019, after obtaining the necessary warrants, Officer Kiskeravage arrived at Appellant's residence along with members of the Clandestine Lab Team and other Allentown Police Department officers to effectuate the warrants. There was not any evidence of methamphetamine or chemicals needed to cook methamphetamine in the apartment. Appellant was arrested at that time for the incident involving Dennis and Walker.

During its case-in-chief, the Commonwealth offered the testimony of Lisa Kurth, a surgical resident at Lehigh Valley Hospital. Dr. Kurth testified that she had experience in the burn unit at the hospital, and was qualified as an expert in burn treatment and diagnosis. Dr. Kurth was one of the physicians who treated the victims. Dr. Kurth testified that at approximately 5:50 a.m. on July 15, 2019, she encountered Dennis and Walker at the burn unit shortly after their arrival. Both were treated with Bacitracin ointment, IV fluids, and pain medication. Dr. Kurth testified that both Dennis and Walker appeared to be in pain.

Trial Ct. Op. at 2-6 (footnotes omitted).

At the conclusion of trial, on August 18, 2020, the jury returned a verdict of guilty on all charges. On October 22, 2020, the trial court sentenced Appellant to an aggregate term of 7 to 15 years' imprisonment. Appellant filed a timely, counseled post-sentence motion on October 29th, challenging the weight of the evidence supporting his convictions and requesting modification of his sentence. The trial court denied the motion on November 2, 2020.

Thereafter, on November 9, 2020, Appellant filed two documents, *pro se*, which are listed on the trial court docket as (1) "Motion to Modify and Reduce Sentence" and (2) "Petition for Appeal of Conviction." **See** Trial Ct. Docket, 11/9/20. In the latter document, Appellant requested the trial court

"grant his petition for Appeal of Conviction" based upon allegations of trial counsel's ineffectiveness and prosecutorial misconduct. ***See*** Petition for Appeal of Conviction, 11/9/20, at 1 (unpaginated). The trial court did not forward the *pro se* notice of appeal to this Court.

On November 19, 2020, the Public Defender's Office filed a motion for appointment of new counsel because Appellant's petition "alleg[ed] ineffective assistance of counsel." Motion for Appointment of Counsel, 11/19/20, at 1 (unpaginated). The trial court granted the motion, and entered an order on November 23, 2020, appointing present counsel, Matthew Rapa, Esquire, to represent Appellant. ***See*** Order, 11/23/20. The next day, November 24th, the trial court entered an order purporting to "**STAY**[ ]" Appellant's petition for appeal, and extend the appeal period until December 14, 2020, "pending review by counsel." Order, 11/24/20. The court noted that while Appellant's document "identified as an appeal, [it] raises issues which would be pursued under the Pennsylvania Post Conviction Relief Act [(PCRA)[3].]" ***Id.*** at n.1. Thus, the court directed Attorney Rapa to "consult" with Appellant and determine if he wanted to file a direct appeal or pursue relief through the PCRA. ***Id.*** On December 4, 2020, the trial court entered another order,

---

[3] 42 Pa.C.S. §§ 9541-9546.

dismissing Appellant's petition for appeal of conviction without prejudice based upon its November 24th order, which purported to extend the appeal period.[4]

Thereafter, Attorney Rapa filed two motions for extension of time, both of which the trial court granted. He ultimately filed an "[a]mended" notice of appeal on March 5, 2021. *See* Appellant's Amended Notice of Appeal, 3/5/21. On March 9th, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal within 45 days. Appellant complied and filed a Pa.R.A.P. 1925(b) statement on April 14, 2021.

On June 3, 2021, this Court directed Appellant to show cause why the appeal — filed on March 5, 2021, from the judgment of sentence imposed on October 22, 2020 — should not be quashed as untimely. Order, 6/3/21. Appellant filed a timely reply, asserting that the trial court extended the period for filing a notice of appeal. *See* Appellant's Reply to Rule to Show Cause, 6/4/21. On June 9, 2021, this Court entered a *per curiam* order referring the issue to the merits panel. Order, 6/9/21. Accordingly, before we address Appellant's substantive issue, we must first determine whether this appeal is properly before us.

Generally, a notice of appeal must be filed within 30 days after entry of the order from which the appeal is taken. Pa.R.A.P. 903(a). In a criminal

_____

[4] On November 25, 2020, the trial court denied Appellant's *pro se* motion to modify or reduce his sentence. *See* Order, 11/25/20.

case, the appeal lies from the judgment of sentence, unless a defendant files a timely post-sentence motion. **See** Pa.R.Crim.P. 720(A)(3). In that instance, the appeal must be filed within 30 days of the order denying the post-sentence motion. **See** Pa.R.Crim.P. 720(A)(2)(a).

Here, the trial court entered an order denying Appellant's counseled, timely post-sentence motion on November 2, 2020. Thus, Appellant's notice of appeal was due by December 2, 2020. The notice of appeal forwarded to this Court was filed on March 5, 2021, and is facially untimely.

Appellant asserts, however, that the trial court "extended the period" to file a notice of appeal, and that counsel filed the appeal within that extended time period. **See** Appellant's Reply to Rule to Show Cause, 6/4/21, at 1-2 (unpaginated). This argument fails. Indeed, it is well-settled that neither a trial court nor this Court has the authority to extend the time for filing a notice of appeal. **See** Pa.R.A.P. 105(b) ("An appellate court . . . may not enlarge the time for filing a notice of appeal[.]"); ***Commonwealth v. Anwyll***, 482 A.2d 656, 657 (Pa. Super. 1984) ("When an Act of Assembly fixes the time within which an appeal may be taken, a court may not extend time for appeal."). Thus, the trial court's purported "extension" orders were legal nullities.

Nevertheless, upon our review of the record and relevant case law, we conclude that a "breakdown in the processes of the court" occurred when the trial court clerk failed to forward Appellant's timely-filed, *pro se* Petition for Appeal of Conviction to this Court. ***See Commonwealth v. Patterson***, 940 A.2d 493, 498 (Pa. Super. 2007) (general rule prohibiting appellate court from

- 7 -

extending time for filing an appeal "does not affect the power of the courts to grant relief in the case of fraud or breakdown in the processes of the court."). Although, generally, courts will not accept *pro se* filings by a defendant who is represented by counsel, we have recognized an exception to this rule when the *pro se* filing is a notice of appeal. This Court's decision in **Commonwealth v. Williams**, 151 A.3d 621 (Pa. Super. 2016), is instructive.

In that case, like here, the appellant filed a timely, counseled post-sentence motion, which the trial court denied. **Williams**, 151 A.3d at 623. Within the relevant 30-day period, the appellant filed a *pro se* notice of appeal. **Id.** However, instead of forwarding it to this Court, the trial court forwarded the notice of appeal to counsel. **Id.** Counsel then filed an untimely notice of appeal. **Id.**

Despite the facial untimeliness of the appeal, the **Williams** panel accepted the appeal as timely filed. The panel opined that, although hybrid representation is generally not permitted,

> Superior Court Internal Operating Procedure ("I.O.P.") 65.24 addresses hybrid representation in the context of a notice of appeal as follows:
>
>> Where a litigant is represented by an attorney before the Court and the litigant submits for filing a petition, motion, brief or other type of pleading in the matter, it shall not be accepted for filing, but noted on the docket and forwarded to counsel of record.
>
>> Exceptions:
>
>>> 1. A pro se notice of appeal received from the trial court shall be docketed, **even in instances where**

**the pro se [appellant] was represented by counsel in the trial court.**

2. A motion by the pro se for appointment of new counsel, for reasons such as abandonment by counsel, or to proceed pro se shall be docketed and referred to Central Legal Staff, or the merits panel if constituted, for review and further action by the Court.

3. A pro se brief or writing filed in response to counsel's petition to withdraw from representation.

210 Pa. Code § 65.24 (emphasis added). Thus, we must address the difference between *pro se* filings, generally, that are "noted on the docket" under Pa.R.Crim.P. 576(A)(4), as opposed to a notice of appeal being "docketed" under I.O.P. 65.24.

\* \* \*

Because a notice of appeal protects a constitutional right, it is distinguishable from other filings that require counsel to provide legal knowledge and strategy in creating a motion, petition, or brief. **We thus hold that this Court is required to docket a *pro se* notice of appeal despite [the a]ppellant being represented by counsel[.]** Additionally, in the case at bar, [the a]ppellant's *pro se* notice of appeal was docketed in the trial court but not forwarded to this Court pursuant to Pa.R.A.P. 902 (note).[5] We deem this a breakdown in the operation of the courts. Therefore, we shall accept this appeal as timely.

*Id.* at 623-24 (some emphasis added and footnotes omitted).

The same is true here. Indeed, the trial court recognized that Appellant's *pro se* Petition for Appeal of Conviction — filed within 30-days of the order denying his post-sentence motion — appeared to be a notice of appeal. **See** Order, 11/24/20, at n.1. At that point, the trial court should

---

[5] The Note to Pa.R.A.P. 902 provides that, when an appellant files a notice of appeal, "[t]he clerk of the trial court transmits one set of the filed papers to the appellate prothonotary (with the requisite filing fee)." Pa.R.A.P. 902, Note.

- 9 -

have forwarded the document to this Court, which would have preserved Appellant's direct appeal rights. Thus, here, as in **Williams**, we conclude there was a breakdown in the operation of the courts, and we will accept Appellant's appeal as timely filed. **See Williams**, 151 A.3d at 624. Accordingly, we proceed to an examination of Appellant's substantive claim on appeal.

Appellant raises one issue for our review:

Whether the sum total of all the evidence adduced at trial, even when viewed in a light most favorable to the Commonwealth as verdict winner, was sufficient as a matter of law to convict Appellant of two counts of aggravated assault?

Appellant's Brief at 4.

Our review of a challenge to the sufficiency of the evidence is well-settled:

[We consider] whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable a fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

- 10 -

*Commonwealth v. Riggs*, 63 A.3d 780, 784 (Pa. Super. 2012) (citation omitted).

In order to secure a conviction for aggravated assault, the Commonwealth must prove, *inter alia*, the defendant

> attempt[ed] to cause serious bodily injury to another, or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S. § 2702(a)(1). The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. When a victim suffers serious bodily injury, the Commonwealth is not required to prove the defendant acted with the specific intent to cause that injury. *See Commonwealth v. Nichols*, 692 A.2d 181, 185 (Pa. Super. 1997). Rather, as noted above,

> [t]he Commonwealth need only prove [the defendant] acted recklessly under circumstances manifesting an extreme indifference to the value of human life. For the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under **circumstances which almost assure that injury or death will ensue**.

*Id.* (citations and quotation marks omitted; emphasis added). *See also Commonwealth v. O'Hanlon*, 653 A.2d 616, 618 (Pa. 1995) (explaining that under the aggravated assault statute, "[t]he recklessness must . . . be such that life threatening injury is essentially certain to occur[; t]his state of mind is, accordingly, equivalent to that which seeks to cause injury").

- 11 -

Here, Appellant contends that the evidence was insufficient to prove he intended to cause serious bodily injury to Walker and Dennis. Appellant's Brief at 11. He asserts that there was no testimony he threatened either one of the victims or had to be restrained from harming them. *Id.* at 11-12. Instead, Appellant maintains he permitted Walker and Dennis to stay in his home, and "only asked Walker to leave when he began to become aggressive and rude." *Id.* at 11. Appellant insists that it was "[o]nly after Walker . . . refused to leave and rushed . . . Appellant [that Walker was struck] with paint stripper." *Id.* He also emphasizes that after the victims "came in contact with the paint stripper, [he] attempted to get them into the shower to wash off the chemical." *Id.* at 12 (record citation omitted). Thus, Appellant insists "the Commonwealth failed to prove that [he] acted with the required *mens rea* to support a conviction of aggravated assault[.]" *Id.*

In the present case, the jury found that both Walker and Dennis sustained "serious bodily injury." *See* Verdict, 8/18/20, at 1 (unpaginated). Appellant does not dispute that finding on appeal. Thus, to the extent his argument focuses on his intent – or lack thereof — to injure the victims, it is misplaced. Indeed, when serious bodily injury occurs, "[t]he Commonwealth need only prove [Appellant] acted recklessly under circumstances manifesting an extreme indifference to the value of human life." *Nichols*, 692 A.2d at 185. Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude there was sufficient evidence for the jury to

find Appellant intentionally, knowingly or recklessly caused serious bodily injury to Walker and Dennis. *See Riggs*, 63 A.3d at 784.

Here, Appellant focuses on his **own** testimony that the liquid was splashed on the victims as a result of an accident — according to Appellant, it was only after Walker "rushed" him that Walker was "struck with paint stripper[,]" and immediately thereafter, Appellant attempted to get both Walker and Dennis in the shower to "wash off the chemical." *See* Appellant's Brief at 11-12; N.T., 8/18/20, at 82-84. However, as the trial court opines, "the testimony and evidence concerning the location of the chemical burns on both victims supported the finding that, contrary to Appellant's testimony, the chemical burns resulted from Appellant throwing the mug at them." Trial Ct. Op. at 10.

Indeed, Walker testified that he and Dennis were walking down the stairs leaving the apartment when Appellant "threw" the liquid on them. N.T., 8/18/20, at 18-19. Dennis confirmed that Appellant was holding the cup in his hand, and told Dennis — who was in between the two men — to "move out of the way." N.T., 8/17/20, at 112, 117. Dennis did not see Walker touch Appellant. *Id.* at 117. Moreover, Appellant's own testimony confirmed that he knew the liquid in the mug was paint stripper, and in particular was "really strong stuff," because it was "the most abrasive one [he] could find for removing all kinds of paint." N.T., 8/18/20, at 81. Finally, the jury observed the location of chemical burns on the neck, arm and back of both victims. *See* N.T., 8/17/20, at 71, 74-76 (Trooper Kiskeravage testifying regarding the

location of the burns, and displaying photographs to the jury); 122 (Dennis showing the jury the scar on her arm); N.T., 8/18/20, at 23-24 (Walker showing jury the scars on his chest and back). As the sole determiner of credibility, the jury was free to believe Walker's testimony that Appellant threw the liquid at the victims, and reject Appellant's claim that the spill was accidental. *See Riggs*, 63 A.3d at 784.

Furthermore, to the extent Appellant argues he did not intend to harm Dennis, we conclude the evidence was sufficient for the jury to find Appellant acted recklessly. The testimony at trial established that Appellant knew when he was about to throw "abrasive" paint thinner at Walker, Dennis was in the crosshairs because he told Dennis to "move out of the way." N.T., 8/17/20, at 112. Although Dennis did not move, Appellant still threw the paint thinner at Walker. Based upon this testimony, the jury could determine that Appellant "could [have] reasonably anticipate[d] that serious bodily injury [to Dennis] would be the likely and logical consequence of his actions." *O'Hanlon*, 653 A.2d at 618. Thus, we conclude Appellant is entitled to no relief.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/17/2022