J-S18016-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JARROD AGUSTIS BULLIE, | : | |
| | : | |
| Appellant | : | No. 950 WDA 2017 |

Appeal from the Judgment of Sentence December 2, 2016
in the Court of Common Pleas of Beaver County
Criminal Division at No(s):  CP-04-CR-0001170-2015

BEFORE:  STABILE, J., MUSMANNO, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MUSMANNO, J.:                FILED JUNE 15, 2018

Jarrod Agustis Bullie ("Bullie") appeals from the judgment of sentence imposed following his conviction of third-degree murder.[1]  We affirm.

On November 4, 2003, two boys discovered the body of Robin Sue Miller ("the victim") in a shed near an old steel factory in Beaver Falls, Pennsylvania. The boys notified police officers with the Beaver Falls Police Department, who responded to the scene.  The victim was found lying face down, with a large rock covered in blood on the back of her head, a puddle of blood under her head, and her pants around her knees.  Underneath the rock, the victim had a large gash in her head, and blood spatters were present on the surrounding surfaces.  Police called a pathology expert to the scene, who determined that

_____

[1] 18 Pa.C.S.A. § 2502(c).

the victim's cause of death was blunt force trauma to the posterior scalp, caused by a strike to the head with the rock that was left on top of her.

After an 11-year investigation, police charged Bullie with criminal homicide based on DNA and testimonial evidence linking him to the crime. Bullie's DNA was found in the victim's vaginal cavity and underneath her fingernails. One witness notified police that Bullie was acting strange and making statements that led the witness to believe that Bullie was involved in the victim's death. A second witness notified police that she saw Bullie, after the victim was found, wearing a coat that she had previously seen the victim wear.

Following a jury trial, Bullie was found guilty of third-degree murder. The trial court deferred sentencing to allow for a pre-sentence investigation. On December 2, 2016, Bullie was sentenced to 18 to 36 years in prison. Bullie filed a timely Post-Sentence Motion, raising claims of insufficiency of evidence and an improper sentence. The trial court denied the Motion. Thereafter, Bullie filed a timely Notice of Appeal and a court-ordered 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Bullie raises the following questions for our review:

I. Whether [Bullie's] conviction should be reversed because the Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt that [Bullie] was guilty of the crime of murder in the third degree?

II. Whether [Bullie's] conviction, assuming that sufficient evidence has been presented, should be reversed because the guilty verdict

rendered contradicts the weight of the evidence presented by the Commonwealth at trial?

III. Whether [Bullie's] sentence, assuming that sufficient evidence was presented, should be modified because the sentence imposed on [Bullie] was not supported by the general guidelines and purposes of the Pennsylvania [S]entencing [C]ode[?]

Brief for Appellant at 10 (capitalization omitted).

In his first claim, Bullie alleges that the evidence was insufficient to support his conviction for third-degree murder. Id. at 36-43. Bullie argues that the evidence was insufficient to prove that he (1) killed the victim, and (2) killed her with malice. Id. at 37, 42. Bullie argues that the DNA of numerous individuals was found on or near the victim's body and there is no way to know when the victim came into contact with each of those individuals. Id. at 37-39. Bullie also argues that the fact that his DNA was found inside the victim's vaginal cavity and underneath her fingernails does not prove that he killed the victim. Id. at 39-41. In support, he cites an expert's testimony that his DNA could have remained identifiable for three to five days, thereby making plausible his claim that he had sex with the victim three days prior to her death. Id. Lastly, he argues that the testimonial evidence linking him to the crime is unreliable because both witnesses were admittedly using drugs around the time of the witnessed activities. Id. at 41-42.

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

[W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient

- 3 -

evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, or part or none of the evidence.

Commonwealth v. Melvin, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

"Third[-]degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." Commonwealth v. Morris, 958 A.2d 569, 576 (Pa. Super. 2008).

Malice is defined as: wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury. Malice may be inferred by considering the totality of the circumstances.

Commonwealth v. Windslowe, 158 A.3d 698, 709 (Pa. Super. 2017) (citation omitted).

Here, forensic pathologist James Smith, M.D. ("Dr. Smith"), testified that the victim's cause of death was blunt force trauma, caused by a strike to

the head with the rock found on top of the victim at the scene of the crime. N.T., 10/19/16, at 53-54. He added that the victim was also strangled, which may have contributed to her death. Id. at 44-45. Dr. Smith further testified that blood spatter at the scene was found close to the ground on the wall of the shed, indicating the victim was lying on the ground inside of the shed when she was struck. Id. at 36-37.

A forensic serologist with the Pennsylvania State Police testified that the DNA tests of swabs from the victim's vaginal cavity and scrapings from underneath her fingernails matched Bullie's DNA. N.T., 10/20/16, at 112-13, 118-19. He also stated that Bullie's DNA was not found on the crotch of the victim's jeans. Id. at 114.

A second expert in forensic pathology, Cyril Wecht, M.D. ("Dr. Wecht"), corroborated Dr. Smith's conclusions regarding the cause of death and positioning of the victim's body. Id. at 16-19. Dr. Wecht further testified that the fact that Bullie's seminal DNA was found in the victim's vaginal cavity, but not on the crotch of her jeans, indicated that the victim did not stand up after Bullie had ejaculated. Id. at 24-27. He opined that had the victim stood up after Bullie ejaculated, some of his semen would have drained from her vagina and onto her jeans. Id. Dr. Wecht added that Bullie's sperm was deposited into the victim's vagina within 24 hours prior to when she was killed. Id. at 24. Based on these facts, and his experience as a forensic pathologist, Dr. Wecht concluded that Bullie had sex with the victim while she was lying down,

strangled her, then struck the victim with the rock before she could stand up, causing her to die where she was found. Id. at 19, 26-27.

Thomas Medarac ("Medarac") testified that several days after the victim was found, he witnessed Bullie acting strangely. N.T., 10/19/16, at 93-94. Medarac stated that Bullie "started praying to [G]od that he was sorry for what he did and just kept going on and on and on...." Id. at 93. Medarac believed Bullie's statements might have been related to the death of the victim, so he reported Bullie's actions to the police. Id. at 93-94.

Melony Bofinger ("Bofinger") testified that days after the victim was killed, she witnessed Bullie wearing a coat that she distinctly remembered seeing the victim wear on numerous occasions. Id. at 113. In addition, she noticed that the coat was oversized on the victim whereas it barely fit Bullie, who, at the time, was significantly heavier than the victim. Id. at 123. Bofinger also testified that at one time, Bullie tried convincing her to go to the area where the victim was found to engage in sexual relations. Id. at 120.

Investigating officers testified that Bullie repeatedly denied knowing the victim when they mentioned her name and showed Bullie a picture of the victim. Id. at 219, 221, 239, 275. He changed his story at trial, admitting that he had sex with a woman whom he knew by the name "Suzanne," who might have been the victim. N.T., 10/21/16, at 142-44.

Viewing the evidence in a light most favorable to the Commonwealth, the evidence was sufficient to prove that Bullie killed the victim. See

Commonwealth v. Santiago, 980 A.2d 659, 662 (Pa. Super. 2009) (stating that "[c]ircumstantial evidence itself can be sufficient to prove any element or all of the elements of a criminal homicide."). While DNA evidence from other individuals was found on the victim, the evidence established that Bullie's DNA was deposited in the victim's vagina less than 24 hours before she was found and the victim did not move after the DNA was deposited, as she was strangled and struck on the head. Further, the evidence that the victim was struck with a rock in the head was sufficient to prove that the killing was done with malice. See Commonwealth v. Cruz-Centeno, 668 A.2d 536, 540 (Pa. Super. 1995) (stating that "[m]alice is properly implied when a deadly weapon is directed to a vital part of the victim's body."); Commonwealth v. Eckhart, 242 A.2d 271, 272 (Pa. 1968) (stating that the "use of a rock upon [the victim's] head constitutes use of a deadly weapon upon a vital part of the body."). Thus, the evidence was sufficient to support Bullie's conviction of third-degree murder, and his first claim is without merit.

In his second claim, Bullie alleges that the verdict was against the weight of the evidence. Brief for Appellant at 43-44. Bullie argues that aside from the DNA found in the victim's vagina and under her fingernails, there is no DNA evidence implicating him in the murder. Id. at 44.

This claim was not raised with the trial court in Bullie's Post-Sentence Motion or in a separate oral motion. Thus, this claim is waived. See Pa.R.Crim.P. 607; Commonwealth v. Thompson, 93 A.3d 478, 490 (Pa.

Super. 2014) (stating that "[a] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing.").[2]

In his third claim, Bullie challenges the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." Moury, 992 A.2d at 170. Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

> * * *

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

Commonwealth v. Moury, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

_____

[2] Bullie's inclusion of a challenge to the weight of the evidence in his Concise Statement is not sufficient to preserve the issue for appellate review. See Thompson, 93 A.3d at 490-91 (holding that raising a weight of the evidence claim for the first time in a 1925(b) concise statement does not preserve the claim for appeal).

Here, Bullie filed a timely Notice of Appeal, and raised his sentencing claim in the Supplemental Post Sentence Motion for Relief. However, Bullie failed to include a Rule 2119(f) statement in his brief. Nonetheless, we decline to find Bullie's sentencing claim waived on this basis because the Commonwealth has not objected to the defect. See Commonwealth v. Gould, 912 A.2d 869, 872 (Pa. Super. 2006) (stating that "[i]n the absence of any objection from the Commonwealth, we are empowered to review claims that otherwise fail to comply with Rule 2119(f).") (citation omitted). Thus, we next determine whether Bullie has raised a substantial question.

Bullie's claims that (a) his sentence is not consistent with the protection of the public, given his lack of prior violent crimes, (b) the trial court improperly relied upon prior purportedly lenient sentences, and (c) the sentence is not consistent with Bullie's rehabilitative needs, raise a substantial question. See Brief for Appellant at 45-47; see also Commonwealth v. Riggs, 63 A.3d 780, 786 (Pa. Super. 2012) (stating that an appellant raises a substantial question where he alleges that "the trial court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of Appellant."). Thus, we will review Bullie's sentencing claims.

> The sentencing court is given broad discretion in determining whether a sentence is manifestly excessive because the sentencing judge is in the best position to measure factors such as the nature of the crime, the defendant's character and the defendant's display of remorse, defiance, or indifference. In order to find that a trial court imposed an unreasonable sentence, we

must determine that the sentencing court imposed the sentence irrationally and that the court was not guided by sound judgment.

Id. at 786 (quotation marks and citations omitted).

Here, the trial court considered the gruesome nature of the murder, Bullie's lengthy criminal history, the sentencing guidelines, Bullie's family background and military service, and statements by Bullie's counsel, family, and high school football coach. See N.T., 12/2/16, at 8, 31-32. Moreover, the trial court had the benefit of a presentence investigation report. See id. at 5.; see also Commonwealth v. Downing, 990 A.2d 788, 794 (Pa. Super. 2010) (stating that "where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed.") (quotation marks and citations omitted). Although the record reflects that the sentencing court mentioned Bullie's prior sentences, See N.T., 12/2/16, at 32, it appears that the court was simply informing Bullie that third-degree murder carries a harsher sentence than his prior convictions. See 204 Pa. Code § 303.16(a).

Thus, we conclude that the trial court did not abuse its discretion in imposing Bullie's sentence.

Based upon the foregoing, we affirm the judgment of sentence.[3]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2018

_____

[3] We note that in his Concise Statement, Bullie raises a claim for prosecutorial misconduct by the Commonwealth. However, Bullie's appellate brief omits any discussion of this claim. See Pa.R.A.P. 2119(a) (stating that an appellant's argument must include a discussion of and citation to pertinent authorities). Accordingly, this claim is waived. See Commonwealth v. Johnson, 985 A.2d 915, 924 (Pa. 2009) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").