2019 PA Super 232

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KHUSEN A. AKHMEDOV | : | |
| | : | |
| Appellant | : | No. 3443 EDA 2015 |

Appeal from the Judgment of Sentence November 2, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0013582-2013

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., PANELLA, J., SHOGAN, J., LAZARUS, J., STABILE, J., DUBOW, J., NICHOLS, J., and McLAUGHLIN, J.

OPINION BY PANELLA, J.:                                          **FILED JULY 29, 2019**

Appellant, Khusen A. Akhmedov, challenges his judgment of sentence entered in the Philadelphia County Court of Common Pleas, after the trial court convicted him of, *inter alia*, four counts of third degree murder.[1] Appellant was participating in a drag race when he struck and killed a mother and three of her children as they attempted to cross the street. Appellant now contests the sufficiency of the evidence sustaining his convictions. Specifically, he

---

[1] A previous three-judge panel majority in this case determined the trial court erred in finding Appellant acted with conscious disregard that death or serious bodily injury was likely to occur as a result of his driving. The panel concluded the Commonwealth had failed to present sufficient evidence of malice to sustain Appellant's third degree murder convictions. The majority reversed in part, and remanded for resentencing on Appellant's remaining convictions. ***See Commonwealth v. Akhmedov***, No. 3443 EDA 2015 (Pa. Super., filed December 8, 2017) (unpublished memorandum). This Court thereafter granted the Commonwealth's application for reargument *en banc* and withdrew the previous panel's decision. Both parties have filed substitute briefs.

claims the Commonwealth failed to prove he acted with malice by driving under circumstances that virtually assured injury or death. We disagree and affirm Appellant's judgment of sentence.

The relevant facts and procedural history of this case are as follows. On July 16, 2013, around 10:30 p.m., Appellant was driving a silver Audi at high speed on Roosevelt Boulevard. Witnesses observed Appellant's vehicle engaged in a drag race with a white Honda. The Audi and Honda were weaving in and out of traffic, almost striking each other's vehicles, and at one point driving so close to one another that their cars appeared hitched together. The racers forced other drivers on the road to swerve to avoid the two speeding cars.

Witnesses stated the cars were driving at least 70 miles per hour, well above Roosevelt Boulevard's posted speed limit of 40 miles per hour. Some observers believed the cars were traveling as fast as 90-100 miles per hour. Their driving caused one witness to remark that the racers were "going to cause an accident." N.T. Trial, 7/9/15, at 61.

The drivers approached the intersection of Roosevelt Boulevard and 2nd Street. The intersection did not have a crosswalk and was not intended for pedestrian traffic. The incline of the road limited visibility to just over 400 feet. As the drag racers crested the hill and continued their competition, they encountered Samara Banks and three of her children, who were crossing the street. Appellant attempted to avoid hitting them, but was unable to stop his car in time. Banks and one of her children were killed instantly. Two of her

other children died from their injuries at area hospitals shortly thereafter.[2] Appellant remained at the scene until emergency responders arrived and was arrested.

Appellant was charged with five counts of recklessly endangering another person, and four counts each of third degree murder, involuntary manslaughter, and homicide by vehicle.[3] The court granted the Commonwealth's motion to admit evidence of prior bad acts, including: testimony about an incident of reckless driving in Lancaster County; a post from Appellant's Facebook page, hosting a video of a silver Audi drag-racing another vehicle and including comments implying Appellant's participation; and Appellant's driving record, containing numerous violations of the Traffic Code.

Appellant proceeded to a bench trial and was convicted on all counts. He was sentenced to four to eight years' incarceration on each count of third degree murder, and one to two years' incarceration on a single count of REAP, with all sentences to be run consecutively. Appellant's remaining crimes either merged for sentencing or had no further punishment imposed, for an aggregate of seventeen to thirty-four years' incarceration. He filed a timely post-sentence motion, which was denied. Appellant filed a timely notice of

---

[2] Banks's sister and fourth child crossed the road just before the collision, and were uninjured.

[3] 18 Pa.C.S.A. §§ 2705; 2502(c); 2504(a); and 75 Pa.C.S.A. § 3732(a), respectively.

appeal and complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). This appeal is now properly before us.

Appellant presents the following questions for our review:

Whether the trial court abused its discretion when it granted the Commonwealth's motion *in limine* to admit evidence of prior bad acts?

Whether the trial court abused its discretion in denying [Appellant's] request for a particular jury charge on the issue of malice in the context of motor vehicle fatalities?

Whether the evidence was insufficient as a matter of law to sustain the convictions for Third Degree Murder as the evidence failed to establish malice on the part of [Appellant]?

Whether the trial court abused its discretion in denying [Appellant's] motion for a new trial on the basis of the weight of the evidence?

Whether the trial court abused its discretion by ignoring mitigating factors and ordering an excessive sentence?

Appellant's Substitute Brief, at 8.[4]

Appellant first challenges the admission of three pieces of prior bad acts evidence at trial. Appellant avers the introduction of his previous convictions for, *inter alia*, speeding and reckless driving, witness testimony describing one of those instances, and a video of drag racing from his Facebook account constituted impermissible propensity evidence. Appellant claims the prejudicial effect of this evidence far outweighed its probative value. Further,

---

[4] We have reordered Appellant's issues for ease of disposition.

- 4 -

Appellant contends this evidence of past reckless behavior cannot clarify whether he actually acted with malice on the evening he struck Banks and her children. Appellant concludes the trial court erred in finding the evidence demonstrated Appellant's knowledge of the dangers of his conduct as well as his intent to engage in reckless activity.

The trial court has discretion over the admissibility of evidence, and we will not disturb such rulings on appeal absent evidence the court abused its discretion. *See Commonwealth v. Ballard*, 80 A.3d 380, 392 (Pa. 2013). An abuse of discretion is not a mere error in judgment. *See Commonwealth v. Ross*, 57 A.3d 85, 91 (Pa. Super. 2012) (*en banc*). Rather, "discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record." *Id*. (citations and internal quotation marks omitted).

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009) (citation omitted). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a

- 5 -

reasonable inference or presumption regarding a material fact." ***Commonwealth v. Tyson***, 119 A.3d 353, 358 (Pa. Super. 2015) (*en banc*) (citation omitted). "All relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402.

Evidence will not be excluded merely because it is harmful to a defendant's case. ***See Commonwealth v. Kouma***, 53 A.3d 760, 770 (Pa. Super. 2012). "The trial court is not required to sanitize the trial to eliminate all unpleasant facts … where those facts are relevant to the issues at hand[.]" ***Commonwealth v. Hairston***, 84 A.3d 657, 666 (Pa. 2014) (citation and internal quotations omitted).

Mere similarities between a defendant's prior bad acts and the crimes for which he is being tried will not qualify for a Rule 404(b)(2) exception. ***See Commonwealth v. Sitler***, 144 A.3d 156, 163 (Pa. Super. 2016) (*en banc*). Rather, to qualify for an exception to Rule 404(b)(1)'s general prohibition, the prior bad acts must have a "close factual nexus sufficient to demonstrate the[ir] connective relevance" to the crime in question. ***Ross***, 57 A.3d at 104 (finding testimony about defendant's previous assaults on other women could not be admitted to prove intent at trial for first degree murder, where defendant did not argue accident, mistake, or lack of required intent).

To determine whether the prior bad acts evidence was relevant, we must review the charges the Commonwealth was seeking to prove. Appellant was charged with third degree murder. To sustain this conviction, the Commonwealth needed to prove that Appellant acted with malice without the

specific intent to kill. *See Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001). "[O]ur courts have consistently held that malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Commonwealth v. Packer*, 168 A.3d 161, 168 (Pa. 2017) (citation omitted).

Malice is more than ordinary recklessness. *See Commonwealth v. Hoffman*, 198 A.3d 1112, 1119 (Pa. Super. 2018). Malice is "a class of wanton and reckless conduct which manifests such an extreme indifference to the value of human life which transcends the negligent killing[.]" *Id*.

Parties are to be given greater latitude to present evidence when they are tasked with establishing a state of mind. *See Commonwealth v. Honeycutt*, 323 A.2d 775, 778 (Pa. Super. 1974). "Where recklessness, wantonness, or willfulness is an issue it is frequently necessary, or desirable in order to establish a strong case, to show not only an indifference to consequences at the instant an accident occurred, but also that such a state of mind persisted … prior to the accident." *Id*. (citation omitted). "Unlike the speed at which a vehicle is traveling, a state of mind which demonstrates a marked disregard for the safety of others is not likely to change significantly in a matter of seconds." *Id*. (citation omitted). "To restrict the compass of a trial (criminal or civil) to the pinpoint of the culminating crisis would be to make verdicts of juries mere guesses." *Id*. (citation omitted). "A conviction based on malice is appropriate where evidence demonstrates the element of

*sustained recklessness* by a driver in the face of an *obvious risk of harm* to his victims." **Commonwealth v. Kling**, 731 A.2d 145 (Pa. Super. 1999) (emphasis in original).

At trial, the Commonwealth introduced Appellant's driving record. Appellant objected to the prejudicial nature of the evidence and was overruled. The parties stipulated to the accuracy of its content: over the course of nearly six years, Appellant accumulated ten driving infractions, including six speeding citations, two convictions for reckless driving, one conviction for careless driving, and one conviction for driving while under license suspension. **See** N.T. Trial, 7/10/15, at 3-6.

One of the instances of reckless driving occurred just eight days before Appellant struck Banks and her children. The Commonwealth called Melissa Stothoff and Officer Thomas Miles to testify about that incident. The trial court accurately summarized their testimony as follows:

> Melissa Stothoff testified that on July 8, 2013, she was traveling on New Danville Pike in Lancaster. New Danville Pike is a two-lane roadway. Ms. Stothoff saw [Appellant's] Audi approaching her from the rear at a high rate of speed. In an attempt to have [Appellant] slow down and back away from her rear bumper, Ms. Stothoff tapped the brakes of her vehicle. [Appellant] responded by pulling next to Ms. Stothoff on the shoulder of the road to yell at her. [Appellant] then pulled behind Ms. Stothoff again and continued to follow her vehicle from a very close distance. Ms. Stothoff raised her cell phone as a signal to [Appellant] that she was calling the police. According to Ms. Stothoff, at the first traffic light, [Appellant] turned left at a red light and almost hit two vehicles. Ms. Stothoff followed [Appellant]; she saw [Appellant] pass through another red light and again almost cause an accident. She continued to follow [Appellant] to relay his position to police dispatch. She saw [Appellant] make another left at a red

light and almost cause another accident. Shortly thereafter, Ms. Stothoff lost sight of [Appellant], but she had already relayed all of [Appellant's] movements as well as [Appellant's] license plate to dispatch.

Officer Thomas Miles ran [Appellant's] license plate and obtained the address associated with [Appellant's] vehicle. Another officer, Officer Binder (first name not mentioned), from a neighboring jurisdiction arrived first at the address Officer Miles had relayed. Officer Binder found the silver Audi in the driveway. When Officer Miles arrived, [Appellant] was already in the driveway with Officer Binder. Officer Miles informed [Appellant] of Ms. Stothoff's description of his driving. [Appellant] acknowledged that he passed Ms. Stothoff but denied all other accusations related to passing through red lights. Officer Miles told [Appellant] that his driving was "completely inappropriate" and cited [Appellant] for reckless driving.

Trial Court Opinion, filed 6/28/16, at 11-12.

The Commonwealth then introduced a video of drag racing taken from Appellant's Facebook profile page. The video depicts a silver Audi, of the same size and model as Appellant's vehicle, racing a BMW down Sandmeyer Lane in Northeast Philadelphia. *See* Commonwealth Exhibit 546. The Commonwealth also introduced a copy of the Facebook comments from the posted video. In response to another comment claiming the BMW was ahead in the race, a comment posted from Appellant's personal Facebook account stated "No. S-4 [the model of Appellant's silver Audi] was ahead till 110 mph and then it [the BMW] started passing slowly." Commonwealth Exhibit 547.

We begin with the Melissa Stothoff incident. Appellant approached Stothoff's car at an aggressive speed and tailgated her bumper. Stothoff's attempts to indicate to Appellant that his conduct was unsafe resulted in further harassment, with Appellant swerving out of the lane and to the

- 9 -

shoulder of the road to yell at her. When Stothoff signaled that she intended to call the police, Appellant responded by illegally passing her car and running several red lights.

Appellant's conduct toward Stothoff bears significant similarities to the conduct that ultimately killed Banks and her children a mere eight days later – including high speeds, rapid lane changes, and a total disregard for the Vehicle Code. For this prior conduct, he received a citation for reckless driving. Moreover, he received an explicit rebuke afterward from Officer Miles, warning that his driving was "completely inappropriate." These facts are certainly capable of establishing Appellant was aware of the possible consequences of his aggressive driving. Thus, the trial court did not abuse its discretion in admitting it, and this issue is due no relief.

Proceeding to the video evidence of drag racing taken from Appellant's Facebook page, we find it was properly admitted to show Appellant's intent to engage in drag racing.[5]

The Commonwealth's case depended upon proving Appellant's intent to drag race at the time of the accident. If Appellant entered into a drag race on a local road where several other cars were driving, the Commonwealth could show Appellant acted with conscious disregard for the risks involved. Indeed,

_____

[5] We acknowledge the trial court admitted this evidence on other grounds. **See** Trial Court Opinion, 6/28/16, at 22. Nevertheless, we "may affirm a trial court's evidentiary ruling if we deem it to have been correct on grounds other than those specified by the court itself, particularly where the additional reason is apparent from the record." **Commonwealth v. Johnson**, 160 A.3d 127, 144 n. 15 (Pa. 2017) (citation omitted).

Appellant attempted to disprove the third degree murder charge by claiming he was not drag racing before the accident – a characterization of his driving that he "vigorously" continues to protest on appeal. Appellant's Brief, at 28; *see also* N.T. Trial, 7/9/15, at 57, 72, 98; N.T. Trial, 7/13/15, at 68. Unlike the defendant in **Ross**, Appellant repeatedly challenged the prosecution's intent evidence.

As for the **Ross** close factual nexus, Appellant was driving down Roosevelt Boulevard in Northeast Philadelphia on the night of the accident. Appellant's vehicle was a silver Audi A4. Several witnesses testified they were first alerted to Appellant's presence when they heard his car make loud acceleration noises. They watched as Appellant sped down the road in an attempt to pass a white Honda. Witnesses believed Appellant was driving between 70 and 100 miles per hour. These witnesses, unprompted, stated their belief that the cars were engaged in a drag race. Moments after passing the witnesses, Appellant's car collided with Banks and three of her children.

The Facebook video shows Sandmeyer Lane, a street that Sergeant Vincent Nowakowski testified is also in Northeast Philadelphia. After a few seconds of filming, the roar of acceleration is audible just before a silver Audi A4 identical to Appellant's accelerates down the road. Appellant's Audi is beside a black BMW as the two cars speed by the camera. In the video's comments section, Appellant bristled at a commenter who believed the BMW won the race and asserted he had been driving 110 miles per hour in the clip.

The video and accompanying comments demonstrated Appellant had

- 11 -

previously engaged in a drag race on a public roadway in Philadelphia.[6] While we acknowledge that Appellant's drag race in the Facebook video did not end in catastrophe, we find the preceding circumstances sufficiently similar to constitute a close factual nexus. In both cases, Appellant was racing his Audi on a street in Northeast Philadelphia. Appellant was operating the car at unlawfully high speeds in order to best his competitor. Because Appellant's intent to engage in drag racing was at the heart of the Commonwealth's case for malice, evidence that Appellant previously engaged in a similar drag race was relevant to prove his intent to drag race on the evening of the collision. Therefore, this evidence was probative of the Commonwealth's allegation that Appellant's recklessness was not a casual, momentary mistake in judgment; rather, the Commonwealth asserted, his drag racing was indicative of a sustained attitude of recklessness and disregard for the lives of others.

Nor do we conclude the trial court abused its discretion in finding the prejudicial effect of introducing the video did not outweigh its probative value. The Commonwealth's theory of malice was premised on Appellant's intent to drag race that Appellant robustly contested at trial. The video shows Appellant operating a car at unlawful speeds on a local road. However, the trial court was not required to exclude this evidence merely because it was harmful to

---

[6] Appellant disputes the location of the roadway in the video in relation to the scene of the accident. However, he does not challenge the accuracy of Sergeant Nowakowski's testimony, which identified Sandmeyer Lane in Northeast Philadelphia as the street where the drag racing in the video took place. *See* N.T. Trial, 7/10/15, at 97-101.

Appellant. In order to sustain a third degree murder conviction, the Commonwealth needed to prove Appellant acted with conscious disregard for the unjustified, extremely high risk of killing or injuring another person by drag racing through an urban area. Thus, we agree that the probative value of the video evidence outweighed the potential for unfair prejudice here.

Finally, we evaluate the admission of Appellant's driving record. Aside from Stothoff and Officer Miles' testimonies about the most recent conviction, the Commonwealth did not introduce evidence explaining the circumstances of Appellant's many other convictions. Rather, it appeared to rely on their cumulative effect to demonstrate Appellant's knowledge of the perils of his conduct.

The trial court agreed, finding that Appellant's previous encounters with police established his sustained recklessness. To support this conclusion, the trial court relied on *Commonwealth v. Riggs*, 63 A.3d 780 (Pa. Super. 2012). In that case, though, the Commonwealth had introduced testimony from each of Riggs' three previous encounters with police to support their introduction. Here, the Commonwealth did not offer additional information about any of these instances, save for the reckless driving incident involving Stothoff and Officer Miles, that would explain the attendant circumstances and their relation to Appellant's current offense. As such, we are constrained to agree with Appellant that the court erred in admitting the evidence of his convictions.

Nevertheless, we hold the error was harmless. Even where the trial court erroneously admitted evidence, this Court may still sustain the verdict if it finds the error harmless. *See Commonwealth v. McClure*, 144 A.3d 970, 975 (Pa. Super. 2016). An error is harmless only if it could not have contributed to the verdict. *See id*., at 975-976. This Court will find harmless error where the error did not prejudice the appellant, or the prejudice was *de minimis*. *See Commonwealth v. Brown*, 185 A.3d 316, 330 (Pa. 2018). Similarly, where "the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict," we will deem the error harmless. *Id*. (citation omitted).

Despite the improper introduction of his driving record, Appellant's convictions were supported by abundant evidence. The Commonwealth provided testimony from several eyewitnesses to the crash who testified that Appellant was swerving, speeding, and otherwise driving erratically while drag racing with another vehicle on a residential street. The court also heard testimony from an accident reconstructionist and medical professionals who testified about Appellant's speed and the extensive injuries Banks and her children sustained. Additionally, the Commonwealth introduced the testimony from Stothoff and Officer Miles, as well as the Facebook video of Appellant drag racing. In light of the foregoing, we find the properly admitted evidence so overwhelming as to render the introduction of Appellant's driving record

utterly insignificant. ***See Brown***, 185 A.3d at 330. Appellant is due no relief on this issue.

Next, Appellant challenges the trial court's denial of his request for a specific jury charge on the issue of malice in the context of motor vehicle crashes. Because Appellant waived his right to a jury trial and was instead tried before the bench, we understand this argument to challenge the court's application of the legal standard for malice. In non-jury trials, we presume the court is "imbued with the knowledge of the law that he would have given in a formal charge in a jury case." ***Commonwealth v. Hunter***, 554 A.2d 550, 558 (Pa. Super. 1989). Given this presumption, we will follow the parties' lead and address this issue under the rubric of a proposed jury charge.

"Appellate review of a charge must be based on an examination of the instruction in its entirety to determine whether it was fair or prejudicial." ***Commonwealth v. Jones***, 912 A.2d 268, 281 (Pa. 2006) (citation omitted). "[U]nless a particular instruction is fundamentally erroneous … no relief is due." ***Commonwealth v. Simpson***, 66 A.3d 253, 268 (Pa. 2013) (citation omitted).

"A trial court is not required to use any particular jury instructions, or particular forms of expression, so long as those instructions clearly and accurately characterize relevant law." ***Commonwealth v. Carson***, 913 A.2d 220, 255 (Pa. 2006) (citation omitted). Where the trial court's instructions track the Pennsylvania Suggested Standard Criminal Jury Instructions, it is

presumed such instructions are an accurate statement of the law. *See Commonwealth v. Kerrigan*, 920 A.2d 190, 198 (Pa. Super. 2007).

Appellant waived his right to a jury trial and was tried instead before the bench. Appellant acknowledged this, yet requested a specific jury instruction on the issue of malice. *See* N.T. Trial, 7/13/15, at 47. Appellant's proposed instruction included language stating:

> …a defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injury or kill. At the very least, the conduct must be such that one could reasonably anticipate death or serious bodily injury would likely or logically result. Essentially, the Commonwealth would have to prove that the defendant would be almost assured that death would occur as a result of his conduct.

*Id*., at 47-48.

The court declined to incorporate the proposed language. *See id*., at 51. Instead, the court retained the Pennsylvania Suggested Standard Criminal Jury Instruction for third degree murder, which states in relevant part:

> For murder of the third degree, a killing is with malice if the perpetrator's actions show his or her wanton and willful disregard of an unjustified and extremely high risk that his or her conduct would result in death or serious bodily injury to another. In this form of malice, the Commonwealth need not prove that the perpetrator specifically intended to kill another. The Commonwealth must prove, however, that the perpetrator took action while consciously, that is, knowingly disregarding the most serious risk he or she was creating, and that, by his or her disregard of that risk, the perpetrator demonstrated his or her extreme indifference to the value of human life.

Pennsylvania Suggested Standard Criminal Jury Instruction § 15.2502C (2015).

This instruction "clearly and accurately" characterizes the relevant law on third degree murder. **Carson**, 913 A.2d at 255. Indeed, Appellant does not claim this instruction is incorrect, merely that he wanted the court to consider additional language from a specific case. Appellant's preference for a different instruction does not demonstrate the court's verdict was fundamentally erroneous. This issue is without merit.

In Appellant's third issue, he argues the Commonwealth presented insufficient evidence to sustain his third degree murder convictions. Appellant asserts the Commonwealth had to show Appellant drove in a manner that almost assured injury or death would occur to prove the malice necessary for a third degree murder conviction.[7] Appellant concludes this Court must vacate his convictions for third degree murder. We disagree.

Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged

---

[7] Appellant protests he could not have consciously disregarded the risk of colliding with a pedestrian, because the intersection where he struck Banks and her children was not intended for pedestrian crossings. "A victim's contributory negligence is not a defense to a criminal charge." **Commonwealth v. McCloskey**, 835 A.2d 801, 808 (Pa. Super. 2003) (citation omitted). Criminal responsibility may be properly assessed against a defendant "whose conduct was a direct and substantial factor in producing the death[,]" "even though other factors combined with that conduct to achieve the result." **Id**., at 807 (citations and internal quotations omitted).

is established beyond a reasonable doubt. **See Commonwealth v. Dale**, 836 A.2d 150, 152 (Pa. Super. 2003).

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Commonwealth v. Bruce**, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted). Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. **See Commonwealth v. Kinney**, 863 A.2d 581, 584 (Pa. Super. 2004) (citation omitted). "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." **Id**. (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." **Commonwealth v. Truong**, 36 A.3d 592, 597 (Pa. Super. 2012) (*en banc*) (citation omitted). Evidence is weak and inconclusive "[w]hen two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances…." **Commonwealth v. Woong Knee New**, 47 A.2d 450, 468 (Pa. 1946).

"The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." **Commonwealth v. Green**, 162 A.3d 509, 523 (Pa. Super. 2017) (*en banc*) (citations omitted).

"Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." **Truong**, 36 A.3d at 597 (citation omitted).

Malice is a legal term, which encompasses "not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Packer*, 168 A.3d at 168 (citation omitted). "Malice may be found where the actor consciously disregards an unjustified and extremely high risk that the actor's conduct might cause death or serious bodily injury." ***Commonwealth v. King***, 990 A.2d 1172, 1177 (Pa. Super. 2010) (citation omitted).

The malice required to sustain a third degree murder or aggravated assault conviction exists "where the accused acts in gross deviation from the standard of reasonable care, failing to perceive that such actions might create a substantial and unjustifiable risk of death or serious bodily injury." ***Commonwealth v. Mercado***, 649 A.2d 946, 955 (Pa. Super. 1994) (citation omitted). Malice may be inferred from the circumstances of the accused's conduct. ***See id***. The defendant's conduct must be such that "one could reasonably anticipate death or serious bodily injury would likely and logically result." *Kling*, 731 A.2d at 148 (citation omitted). "In view of this heightened *mens rea*, motor vehicle crashes seldom give rise to proof of the malice needed to sustain a conviction for third degree murder[.]" *Id*. "However, in some circumstances the malice requirement has been met, and this [C]ourt has not hesitated to uphold an aggravated assault or a third degree murder

charge depending on the particular facts of a motor vehicle crash." ***Riggs***, 63 A.3d at 785 (citation omitted).[8]

While the circumstances of most motor vehicle crashes cannot establish the malice required to sustain a third degree murder conviction, we note several exceptions in the case law. In ***Packer***, the Pennsylvania Supreme Court upheld the third degree murder conviction of a woman who lost consciousness after inhaling gas from an aerosol can and crashing into another vehicle, killing its occupant. ***See*** 168 A.3d at 163. Packer had, on a previous occasion, inhaled aerosol gas and "black[ed] out." ***Id***., at 165. Despite this, Packer inhaled gas while operating her vehicle. The Court found this evidence was sufficient to show she consciously disregarded the risk that her conduct could cause death or serious bodily injury.

In ***Riggs***, this Court upheld the defendant's conviction for aggravated assault by vehicle based on Riggs' history of reckless driving. ***See*** 63 A.3d at 785. Riggs had previously been involved in three high-speed police chases. At his trial, officers from the three previous police interactions testified. In all three incidents, Appellant disregarded attempts by police to stop his vehicle and eventually fled on foot. One of the previous chases ended when Appellant crashed into a parked car. The ***Riggs*** panel found the "evidence clearly support[ed] the conclusion that [Riggs] was aware of the risks involved in reckless driving." ***Id***.

---

[8] "There is no distinction between the malice essential to third degree murder and that necessary for aggravated assault." ***Kling***, 731 A.2d at 147.

Notably, this Court also affirmed the third degree murder conviction challenged in **Kling**, following the appellant's deadly participation in a racing incident. **See** 731 A.2d at 146. Kling sped through significant curves in the road and past several cautionary signs as he competed against the other racer. At one point, Kling swerved his vehicle into the opposite lane of traffic and nearly collided with another driver. Kling then passed two other vehicles before colliding with a vehicle and killing one of its occupants. In upholding his conviction, the panel determined Kling had "time and reason to calculate and reflect upon a deadly condition taking place, such that recklessness and malice exist." **Id**., at 150.

Appellant attempts to distinguish his conduct from other drivers convicted of third degree murder or aggravated assault following car accidents. Appellant avers that "approaching a hill on the Roosevelt Boulevard at a high rate of speed is categorically different than crossing over the no crossing line while taking a blind curve down a windy mountain road," as the defendant did in **Kling**. Appellant's Substitute Brief, at 25-26.

Instead, Appellant asks this panel to consider his behavior akin to that of the driver in **Commonwealth v. Comer**, 716 A.2d 593 (Pa. 1998). Comer drank beer and took muscle relaxers before driving. Comer sped down a busy road before veering onto a sidewalk. He knocked over a light pole before colliding with a bus shelter, killing one person and seriously injuring another. In reversing his conviction for aggravated assault, the Court found no evidence

that Comer was aware of his reckless conduct or that he "considered, then disregarded, the threat to the life of the victim." *Id*., at 597.

In this case, the Commonwealth presented testimony at trial from several witnesses of the drag race and fatal crash. Timothy Hutson was driving on Roosevelt Boulevard when he noticed loud revving noises coming from vehicles behind him. *See* N.T. Trial, 7/9/15, at 38. Hutson checked his rearview mirror and saw a silver Audi and a white Honda rapidly speeding toward him. *See id*. Hutson quickly moved to the far lane to avoid a possible collision. *See id*., at 39. Even after moving out of the way, Hutson felt his car shake as the Audi and Honda drove by, due to the incredible speed with which they passed him. *See id*. Hutson estimated the Audi was traveling at 90 to 100 miles per hour as it passed him on the right. *See id*. He believed the two cars were drag racing and watched as they weaved wildly in and out of traffic. *See id*., at 43. Hutson heard a bang before he saw the bodies of Banks and her children "flying" and stopped his car to render aid. *Id*., at 39-40. He saw the Audi "all damaged up" as he exited his car. *Id*., at 48.

Iesha Aikens was a passenger in Eugene Townes' car, traveling down Roosevelt Boulevard on the night of the accident. *See id*., at 59. She saw a silver car and a white car swerving into different lanes as they "weaved in and out" of traffic. *Id*., at 63. She believed the silver car was traveling at 80 miles per hour. *See id*. She voiced concern to Townes, observing the drivers were "going to cause an accident." *Id*., at 61. Moments later, Aikens saw Banks and one of her children lying in the street after the collision. *See id*., at 64.

Eugene Townes testified that he also saw a white Honda and a silver Audi as he drove down Roosevelt Boulevard. *See id*., at 89-91. He noted the Audi was "really flying" as it approached an intersection and watched as the cars swerved around other vehicles. *Id*., at 92. Townes testified that, while the Audi was behind the Honda at one point, the cars "looked [] like if you hook a chain together to one car to another[.]" *Id*., at 93. He saw the Audi and Honda crest the hill before he lost sight of them. *See id*., at 92, 94. As he drove on, Townes saw a baby carriage and a child in the road and stopped his car to dial 911. *See id*., at 93-94.

Michael Perez, another driver on the Boulevard that night, testified at trial. *See* N.T. Trial, 7/10/15, at 65. Perez told the court he noticed an Audi and a Honda racing toward him when he looked in his rearview mirror. *See id*., at 66. He believed the cars were driving 80 to 90 miles per hour as they passed him. *See id*. He saw the Audi hit Banks and her children before the car swerved into another lane. *See id*., at 66-67. Perez pulled to the side and waited for the police to arrive. *See id*., at 67. That night, he gave a statement to one of the responding officers, stating that the Audi had attempted to "nudge" the Honda at one point during the race. N.T. Trial, 7/13/15, at 38-39.

The Commonwealth also introduced expert testimony on accident reconstruction from Officer William Lackman. *See* N.T. Trial, 7/8/15, at 3-7. The officer noted that pedestrians are common along Roosevelt Boulevard, as many people live in houses abutting the highway. *See id*., at 102. Officer

Lackman testified that Appellant's minimum speed, based on calculations made from the skid marks at the scene, was at least 73 miles per hour. ***See id***., at 72. He also testified that Banks's body landed 210 feet away from the point of impact, and he calculated that her body traveled at a rate of 79 miles per hour after Appellant's Audi struck her. ***See id***., at 79-80. Officer Lackman stated Banks and her children should have been visible to Appellant at least 421 feet away. ***See id***., at 96. He testified that he believed Appellant could have avoided the accident entirely by adhering to the posted speed limit of 40 miles per hour. ***See id***., at 94, 181; ***see also*** Commonwealth's Exhibit C-426.

The Commonwealth then presented testimony from Stothoff and Officer Miles about Appellant's most recent reckless driving conviction, which occurred just eight days before the fatal crash. ***See*** N.T. Trial, 7/10/15, at 9-44. Officer Miles testified that he warned Appellant about his "completely inappropriate" driving, in violation of the Vehicle Code. ***See id***., at 38. And, the trial court saw a video taken from Appellant's Facebook page, featuring Appellant's silver Audi drag racing another vehicle. ***See id***., at 96. A police sergeant testified that the road depicted in the video, Sandmeyer Lane, was in the Northeast section of Philadelphia. ***See id***., at 97.

Viewing the evidence introduced at trial in the light most favorable to the verdict winner, the Commonwealth proved beyond a reasonable doubt that Appellant consciously disregarded the risk his actions could kill or injure others. Appellant's self-serving characterization of his conduct as mere speeding fails to acknowledge the clear dangers of his driving. The evidence

shows Appellant intentionally engaged in a drag race with the white Honda on a street full of cars. As part of the race, he traveled at a speed of *at least* 73 miles per hour, and likely higher, in an attempt to outrun the Honda. His actions included rapid lane changes that required other drivers to swerve out of his way to avoid a collision, efforts to "nudge" his fellow racer's vehicle, and driving so closely to the Honda that he appeared hitched to it. Far from mere speeding, Appellant careened through the intersection at, by conservative estimates, nearly twice the posted speed limit after weaving in and out of traffic.

We believe, as did the panel in *Kling*, that "the aggregate of these circumstances plainly warned [A]ppellant his conduct was nearly certain to result in a serious or fatal disaster." 732 A.2d at 150. Appellant was previously warned about his reckless driving, just days before the accident. Despite this earlier warning, and despite several near-collisions with the Honda and with other drivers on this residential road before the crash, Appellant nevertheless continued his race until it reached its lethal conclusion. As we find the instant set of facts far closer to *Packer*, *Riggs*, and *Kling* than *Comer*, we conclude that Appellant's sufficiency challenge merits no relief.

In his fourth issue, Appellant challenges the weight of the evidence.[9] We do not review challenges to the weight of the evidence *de novo* on appeal.

_____

[9] Despite Appellant's acknowledgment of the separate standards of review for sufficiency and weight issues, he does not discuss the inherent conflict in

*See Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009). "[A]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Chine*, 40 A.3d 1239, 1243 (Pa. Super. 2012) (citation omitted).

In order to grant a new trial on the grounds that the verdict is against the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id*., at 1243-1244 (citations omitted). A verdict shocks the judicial conscience when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench[.]" *Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa. Super. 2004) (citation omitted).

Appellant first argues the court mischaracterized the area where the crash occurred as "residential." Trial Court Opinion, filed 6/28/16, at 14; Appellant's Substitute Brief, at 32. Appellant contends Officer William Lackman, a Commonwealth witness, admitted on cross-examination that

_____

raising these issues simultaneously. *See* Appellant's Substitute Brief, at 3-6. This Court has long held that "a challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the Commonwealth has produced sufficient evidence of each element of the crime, but questions which evidence is to be believed." *Commonwealth v. Richard*, 150 A.3d 504, 516 (Pa. Super. 2016) (citations and internal quotations omitted). Nevertheless, as Appellant raised separate sufficiency and weight claims in his post-sentence motion and Rule 1925(b) statement, and the trial court responded to each challenge in its Rule 1925(a) opinion, we have addressed both issues here.

Roosevelt Boulevard is a highway. *See* N.T. Trial, 7/8/15, at 102. Appellant asserts a highway cannot be residential in nature. He concludes that because Roosevelt Boulevard was erroneously deemed residential by the trial court, the court's finding of malice was against the weight of the evidence.

The Vehicle Code defines a highway as follows:

**"Highway."** The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park.

75 Pa.C.S.A. § 102.

The Code also defines a residence district as the "territory contiguous to and including a highway not comprising a business district when the property on the highway for a distance of 300 feet or more is in the main improved with residences or residences and buildings in use for business." *Id*.

Instead of supplying at trial a precise definition of either a highway or a residential area, Appellant's counsel offered his own comparisons between Roosevelt Boulevard and major roadways like Interstate 95. On cross-examination, Officer Lackman conceded the area may be deemed a highway. *See* N.T. Trial, 7/8/15, at 102. However, he specifically stated that unlike Interstate 95, Roosevelt Boulevard is accessible to and commonly traversed by pedestrians and that the area surrounding the crash "is a mix of private residences and businesses[.]" *Id*., at 102.

Other evidence also demonstrated that houses lined Roosevelt Boulevard, where the crash occurred. The victim's sister testified she was standing beside the road when people from nearby houses came outside to render aid following the crash. *See* N.T. Trial, 7/9/15, at 19. Photographs taken at the scene and submitted into evidence show houses along the side of Roosevelt Boulevard where the crash occurred. *See* Commonwealth's Exhibits C-54, C-86, C-156. Further, Appellant himself concedes that "witnesses did testify that residences abutted [] Roosevelt Boulevard." Appellant's Substitute Brief, at 33.

Appellant's attempts to challenge the trial court's reference to Roosevelt Boulevard as a residential area are unavailing. By the Vehicle Code's definition, a residence district contains houses and businesses. *See* 75 Pa.C.S.A. § 102. Evidence presented at trial showed the stretch of Roosevelt Boulevard where the accident occurred contained both residences and businesses bordering the road. Under these circumstances, the court did not abuse its discretion.

Appellant's second weight claim is also faulty. He argues the court erroneously overlooked flaws in Officer Lackman's testimony regarding how fast Appellant was traveling at the time of the collision. Appellant does not provide any citations to cases in support of this argument, which spans a single page in his brief. Appellant fails to explain how the trial court abused its discretion or how this evidence was so "tenuous, vague and uncertain" that the verdict shocks the conscience. *Chine*, 40 A.3d at 1243 (citation omitted).

Conversely, much of the evidence presented at trial supported Officer Lackman's calculations that Appellant was traveling at a minimum of 73 miles per hour when he struck Banks, based on the location of her body. Multiple eyewitnesses testified Appellant's vehicle was racing down Roosevelt Boulevard when he struck Banks and her children. Those witnesses estimated Appellant was traveling as fast as 90-100 miles per hour.

Officer Lackman refuted the possibility another car shown on security camera footage may have struck Banks. He testified, "That car, at least from where I'm seeing it, viewing this video, it's in the center lane. And the body of Banks came to rest in the left lane. So no, [the other car is] not burning through where she landed." N.T. Trial, 7/8/15, at 160. Despite repeated prodding from Appellant's counsel, eyewitnesses to the accident also denied seeing another car strike Banks after the initial collision. The trial court did not abuse its discretion in denying Appellant's motion for a new trial based on Officer Lackman's testimony.

In his final weight claim, Appellant challenges the court's application of the sustained recklessness doctrine. Appellant avers the court abused its discretion by only considering his behavior before the crash. He contends the court disregarded his attempts to avoid hitting Banks and her children and his decision to stop his vehicle and wait for emergency services after the crash.

This Court has found that "a conviction based on malice is appropriate where evidence demonstrates the element of sustained recklessness by a

driver in the face of an obvious risk of harm to his victims." ***Kling***, 731 A.2d at 149 (emphasis omitted).

Here, Appellant misleadingly quotes the trial court's opinion in an attempt to show the court refused to consider his conduct during and after the fatal crash. The court's opinion reads, in relevant part:

> …[Appellant] is correct that the evidence showed that he attempted to evade the decedents when he saw them and that the decedents were in an area where no warning signs or crosswalks exist. *This court acknowledged as much*, but [Appellant's] racing for two lights through a residential neighborhood, at nearly double the posted speed limit, maneuvering around vehicles in an attempt to jockey for pole position with his competition, and his maintenance of that speed over a blind crest was the basis of his conviction.

Trial Court Opinion, filed 6/28/16, at 20 (emphasis added).

The court also acknowledged at trial that Appellant did stop his car and return on foot in order to render emergency aid. ***See*** N.T. Trial, 7/13/15, at 90. Notwithstanding these actions, the trial court ultimately decided Appellant acted with malice.

The court's opinion and reasoning articulated at trial show that it considered Appellant's conduct as a whole, at all stages of the incident. The court did not, then, "erroneously overlook[] important, undisputed evidence" of Appellant's conduct. Appellant's Substitute Brief, at 36. The trial court's finding that Appellant acted with malice does not shock the judicial conscience, and Appellant's motion for a new trial was properly denied. We decline to grant Appellant relief on this issue.

Lastly, Appellant claims the court imposed an excessive sentence on his convictions for third degree murder. According to Appellant, the court erred when it failed to consider mitigating factors, as well as the accidental nature of the offense.

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted).

> Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[;]" and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[A.] § 9781(b).

***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*) (citation omitted).

Here, Appellant filed a post-sentence motion for reconsideration, which was denied. He thereafter filed a timely notice of appeal and included a Rule 2119(f) statement in his brief, explaining his reasons for challenging the discretionary aspects of his sentence. ***See*** Appellant's Brief, at 12-13. We must then consider whether Appellant presented a substantial question.

We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists. ***See Commonwealth v. Tirado***, 870 A.2d 362, 365 (Pa. Super. 2005). "Our inquiry must focus on the reasons for

which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Id*. (citation and emphasis omitted); *see also* Pa.R.A.P. 2119(f).

Appellant "must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." ***Commonwealth v. McAfee***, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted). That is, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." ***Tirado***, 870 A.2d at 365.

Appellant's Rule 2119(f) statement claims the sentencing court imposed a manifestly excessive sentence and failed to consider mitigating factors. ***See*** Appellant's Brief, at 13. Specifically, Appellant believes the court erred by not considering that Banks's and her children's deaths occurred as the result of an accidental, rather than an intentional, homicide. ***See id***.

This Court has previously held that "an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question." ***Commonwealth v. White***, 193 A.3d 977, 983 (Pa. Super. 2018) (citation omitted); ***see also Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014). Therefore, we will review the merits of Appellant's claim.

Our standard of review of a sentencing challenge is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (citation omitted).

In fashioning a sentence, the court must consider the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. *See Commonwealth v. Ventura*, 975 A.2d 1128, 1134 (Pa. Super. 2009). The court must also consider the sentencing guidelines in its decision, though these are nonbinding. *See Commonwealth v. Walls*, 926 A.2d 957, 963-964 (Pa. 2007). Where the court sentences outside of the guidelines, this Court shall vacate the sentence only where it finds the sentence imposed is unreasonable. *See Commonwealth v. Lewis*, 45 A.3d 405, 411 (Pa. Super. 2012).

> [W]here the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Additionally, the sentencing court must state its reasons for the sentence on the record. The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors.

*Ventura*, 975 A.2d at 1135 (citation omitted).

Here, the court sentenced Appellant to a term of four to eight years' incarceration for each third degree murder conviction, to run consecutively. *See* N.T. Sentencing, 11/2/15, at 46-47. This sentence was below the standard guideline range. *See id*., at 34. The court also sentenced Appellant to a one to two year term of incarceration based on his conviction for REAP. *See id*., at 47-48. This sentence was above the standard guideline range. *See id*., at 48. The court ordered that each of Appellant's sentences run consecutively, stating, "I cannot undervalue the life of anyone who died in this instance." *Id*., at 47.

The trial court had the benefit of a presentence investigation report as well as a mental health report. *See id*., at 2. The court placed its reasoning for the sentence, including its diversion from the sentencing guidelines, on the record. In particular, the court considered the enormous loss to the Banks family, including Banks's surviving son; Appellant's malice by engaging in drag racing at the time of the accident; the need to protect the community from Appellant's actions; and Appellant's potential for rehabilitation. *See id*., at 38-48. Based upon the foregoing, the court did not abuse its discretion in sentencing Appellant to an aggregate 17-34 years' incarceration.

We have determined Appellant is due no relief on any of his appellate issues. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

President Judge Emeritus Bender, Judges Shogan, Lazarus, Stabile, Dubow, Nichols, and McLaughlin join the opinion.

President Judge Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/29/19