J-S07010-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARIUS LEE BURGESS | : | |
| | : | |
| Appellant | : | No. 1006 WDA 2021 |

Appeal from the Judgment of Sentence Entered May 26, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006045-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARIUS BURGESS | : | |
| | : | |
| Appellant | : | No. 1007 WDA 2021 |

Appeal from the Judgment of Sentence Entered May 26, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0000157-2021

BEFORE:   OLSON, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: APRIL 20, 2022**

_____

[*] Retired Senior Judge assigned to the Superior Court.

In this consolidated appeal,[1] Appellant, Marius Lee Burgess, appeals from the May 26, 2021 judgments of sentence imposing an aggregate sentence of two to four years' incarceration after Appellant pleaded guilty to simple assault (2 counts), strangulation – applying pressure to throat or neck (1 count), and unlawful restraint – serious bodily injury (1 count).[2] We affirm.

The record demonstrates that, on May 26, 2021, Appellant pleaded guilty, pursuant to a negotiated agreement, to simple assault at trial court docket CP-02-CR-0000157-2021 ("CR-157"). Appellant also pleaded guilty, pursuant to a negotiated agreement, to simple assault, strangulation – applying pressure to throat or neck, and unlawful restraint – serious bodily injury at trial court docket CP-02-CR-0006045-2020 ("CR-6045"). That same day, the trial court sentenced Appellant at CR-157 to one to two years' incarceration for his conviction of simple assault. At CR-6045, the trial court sentenced Appellant to two years' probation for his strangulation conviction, five years' probation for his unlawful restraint conviction, and one to two years' incarceration for his simple assault

---

[1] In a September 14, 2021 *per curiam* order, this Court consolidated *sua sponte* Appellant's two appeals docketed with this Court at 1006 WDA 2021 and 1007 WDA 2021.

[2] 18 Pa.C.S.A. §§ 2701(a)(1), 2718(a)(1), and (2902(a)(1), respectively.

conviction, with the entire sentence at CR-6045 set to run consecutively to the sentence imposed at CR-157.[3]

At CR-6045, Appellant filed a timely motion to reconsider his sentence on May 27, 2021. At CR-157, Appellant filed an untimely post-sentence motion on June 8, 2021. That same day, Appellant filed a motion to reinstate his post-sentence rights *nunc pro tunc* at CR-157. On June 23, 2021, the trial court expressly granted Appellant's motion to reinstate his post-sentence rights *nunc pro tunc* and scheduled a hearing on Appellant's post-sentence motions. After entertaining argument on Appellant's post-sentence motions, the trial court denied said motions on August 25, 2021. This appeal followed.[4]

Appellant raises the following issue for our review: "Did the [trial c]ourt abuse its discretion in sentencing [Appellant] to an aggregate sentence of two to four years of incarceration?" Appellant's Brief at 3.

Appellant challenges the discretionary aspects of his sentences, arguing that the trial court abused its discretion by imposing "its sentence[s] on [Appellant] due solely to the nature of the crime and [] failed [to consider, or]

_____

[3] Appellant's sentence of five years' probation imposed for his unlawful restraint conviction was set to run concurrently to the sentence of two years' probation imposed for his strangulation conviction. **See** Trial Court Order (CR-6045), 5/26/21. In addition to the confinement and probation imposed at CR-157 and CR-6045, Appellant was required to comply with DNA registration, successfully complete a batterer's intervention program, undergo drug and alcohol and mental health evaluations and successfully complete any recommended treatment, and have no contact with the victim. **Id.**

[4] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

to refer [to,] any other statutory considerations when fashioning the sentence[s]." *Id.* at 14.

> It is well-settled that "the right to appeal a discretionary aspect of sentence is not absolute." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, we should regard his appeal as a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 162 (Pa. Super. 2007). As we stated in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):
>
>> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>>
>> We conduct a four-part analysis to determine: (1) whether appellant [] filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>>
>> *Id.* at 170. We evaluate on a case-by-case basis whether a particular issue constitutes a substantial question about the appropriateness of sentence. *Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001).

*Commonwealth v. Hill*, 210 A.3d 1104, 1116 (Pa. Super. 2019) (original brackets omitted). If an appellant fails to raise a challenge to the discretionary aspects of a sentence either by presenting a claim to the trial court at the time of sentencing or in a post-sentence motion, then the appellant's challenge is considered waived. *Commonwealth v. Lamonda*, 52 A.3d 365, 371 (Pa. Super. 2012) (*en banc*) (citation omitted), *appeal denied*, 75 A.3d 1281

- 4 -

(Pa. 2013). A substantial question exists when the appellant presents a colorable argument that the sentence imposed is either (1) inconsistent with a specific provision of the Pennsylvania Sentencing Code or (2) is "contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Mastromarino**, 2 A.3d 581, 585 (Pa. Super. 2010), *appeal denied*, 14 A.3d 825 (Pa. 2011). "While a bald claim of excessiveness does not present a substantial question for review, a claim that the sentence is manifestly excessive, inflicting too severe a punishment, does present a substantial question." **Commonwealth v. Hicks**, 151 A.3d 216, 227 (Pa. Super. 2016), *citing* **Commonwealth v. Haynes**, 125 A.3d 800, 807-808 (Pa. Super. 2015), *appeal denied*, 167 A.3d 1287 (Pa. 2017).

Here, the record reflects that Appellant filed timely notices of appeal, properly preserved challenges to the discretionary aspects of his sentences in his post-sentence motions, and included a Rule 2119(f) statement in his brief. Appellant's Brief at 9-11. As such, Appellant complied with the technical requirements to challenge the discretionary aspects of his sentences. **Hill**, 210 A.3d at 1116. Therefore, we review Appellant's Rule 2119(f) statement to see if he presents a substantial question.

In his Rule 2119(f) statement, Appellant argues that the trial court "failed to consider and reference the statutory factors in 42 Pa.C.S.[A.] § 9721(b), and instead fashioned [] sentence[s] that only reflected the seriousness of the crime, which is contrary to the fundamental norms that underlie the sentencing process." Appellant's Brief at 11 (citation omitted).

In so arguing, we find that Appellant raises a substantial question regarding consideration of the Section 9721(b) sentencing factors. **See Commonwealth v. Riggs**, 63 A.3d 780, 786 (Pa. Super. 2012) (stating, an assertion that the "trial court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense[,] and the rehabilitative needs of [an a]ppellant, as 42 Pa.C.S.A § 9721(b) requires, and instead focused on the injuries suffered by the complaining victims" raises a substantial question), *appeal denied*, 63 A.3d 776 (Pa. 2013). Therefore, we will address the merits of Appellant's claim challenging the discretionary aspects of his sentences based upon the trial court's alleged failure to consider the Section 9721(b) sentencing factors.

Appellant asserts that the trial court "imposed its sentence[s] on [Appellant] due solely to the nature of the crime and that the [trial c]ourt failed to refer to any other statutory considerations when fashioning the sentence[s]." Appellant's Brief at 14. Specifically, Appellant contends the trial court "did not examine the factors of the protection of the public, the gravity of the offense in relation to the impact on the victim and the community, and the rehabilitative needs of [Appellant], pursuant to 42 Pa.C.S.[A.] § 9721(b)." Appellant's Brief at 16.

It is well-established that "[w]hen imposing a sentence, a [trial] court must consider the factors set forth in 42 Pa.C.S.A. § 9721(b)." **Commonwealth v. Feucht**, 955 A.2d 377, 383 (Pa. Super. 2008), *appeal*

*denied*, 963 A.2d 467 (Pa. 2008). Section 9721(b) of the Pennsylvania Sentencing Code, in pertinent part, states,

> the [trial] court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with section 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The [trial] court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing and taking effect under section 2155 (relating to publication of guidelines for sentencing, resentencing and parole, risk assessment instrument and recommitment ranges following revocation).

42 Pa.C.S.A. § 9721(b). "The [trial] court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b). However, the record as a whole must reflect due consideration by the [trial] court of the statutory considerations." ***Feucht***, 955 A.2d at 383 (citations omitted).

Appellate review of a trial court's sentencing determination is governed by Section 9781(c) of the Sentencing Code.

> Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the [trial] court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable."

***Commonwealth v. Bowen***, 975 A.2d 1120, 1123 (Pa. Super. 2009), *citing* 42 Pa.C.S.A. § 9781(c).

At sentencing, the trial court stated,

in the seven years that I've known you, seven years, okay, you came into mental health court in July of 2014. If that is the best that you can do to stay away from [the victim], it's pretty poor, okay, because in seven years, this has been an ongoing issue.

[Y]ou came into [the trial] court on July 28[,] 2014, you know, with felony cases, [and] you were told to have no violent contact with [the victim]. That was [July 28, 2014.] On [August 12, 2014, the victim] filed a [petition for a protection from abuse ("PFA") order.] So that no-violent-contact order was not even in effect for over two weeks, and there' s a [petition for a PFA order] all of a sudden. So we moved you, put you on [electronic home monitoring].

We give you no contact with [the victim] in September [2014,] to make it formal through mental health court[,] as well as amending our prior order, no contact with [the victim].

[I]n December [2014], you tell [the trial court] that she attacked you at a program and was thrown out, but then, in January [2015], there's new charges. You end up[, on] January 2[,] 2015[,] back in the Allegheny County jail.

We put you back on electronic home monitoring, which is what your counsel is asking us to do again [here today], all right. We put you on electronic home monitoring, and what happen[ed]? You know, you g[o]t out of [R]enewal [April 20, 2015, we] put you on [electronic home monitoring on June 9, 2015,] you are arrested again for simple assault with the same victim[ - the] same victim less than [] two months later, okay. The charges get dismissed, you know, as sometimes that happens in domestic violence cases, and [the trial court] put you out again on electronic [home] monitoring [in June 2015.]

[I]n July [2015], you're telling us that you are kicked out of your cousin's house and you're living with your mom and you're going back and forth whether you're living with your mom or your cousin, and we find out in September [] 2015[,] that [the] cousin you're living with is actually [the victim], that you're staying with [the victim] while you're on house arrest. And things again get violent. So, again, you end up getting arrested.

You know, at that point, we told you, we're not going to deal with this anymore, and we sent you to state prison, to [a] state intermediate punishment drug and alcohol program because so much of this involves intoxication all the time. We send you up to

- 8 -

state prison in the hopes that you will get the help that you need and come out and not have a problem.

And I remember seeing you [] at the [local grocery store] after you got out of state prison, and who were you with again? [The victim], right? [(Appellant answers in the affirmative.)] Even though there was still a probation in effect, even though that probation still had a no-contact [with the victim requirement]. You know, then I don't hear anything about violence for awhile. You're not paying restitution, but you finally pay that, and I decided to close your last case on February 7[,] 2020. And on March 14[,] 2020, you pick up the strangulation, unlawful restraint, [and] simple assault case [(referring to CR-6045)].

I let you out of jail then because of the [COVID-19 global] pandemic, right? And what happens? Now we have the new case in November [] 2020 [(referring to CR-157)].

So, you know, you're going to tell me that you've moved on? November [2020,] is not that long ago. It's only May [2021]. When did you move on because the entire time, this seven years, it has been you and [the victim] and it's been violent, and it just has to stop. And you can tell me you tried your best to avoid her, but you didn't. You tried your best to live with her. Lying to the [trial] court, passing her off as your cousin so you could serve your [electronic home monitoring] with her, and you want me to put you back on [electronic home monitoring] and you think I'm going to put you on house arrest so, what, you can go do the same thing? What am I supposed to do with you[?] The stint in the Allegheny County jail didn't seem to help. The state [intermediate punishment drug and alcohol ] program didn't help. [Electronic home monitoring] didn't help. What am I supposed to do with you?

. . .

You know, we always liked you[.] Everybody in our [trial] court liked you. You have so much potential. I cannot tell you the number of times that I've told you that. You know, you're a great chef. Everywhere you worked, they've loved you, they've promoted you[.] I used to like to come [] to [the restaurant where you worked] because I knew you were in the kitchen and I knew the food was going to be good.

[T]here's no doubt you're a good guy, but the problem is this issue with [the victim], and what am I supposed to do to stop that? I

can't trust you on electronic home monitoring, I can't. [I]f you're going to pass [the victim] off as your cousin to live with her, I can't believe what comes out of your mouth anymore. That's the problem.

. . .

It's not a matter of you being with [the victim] and being happy. When you're without her, you're depressed. It's because you don't have your medication. That's what causes those swings, and you should know better by now. Since 2014. It's just the most difficult thing because I just don't know what's going to help you because nothing seems to work. We've tried everything we can try, so do I just need to warehouse you so that you [and the victim] can both truly move on and stay away from each other? Is that what has to happen? That's what I'm thinking because what else am I supposed to do? Nothing else has worked in seven years.

N.T., 5/26/21, at 29-35 (formatting modified; extraneous capitalization omitted). In addition to the trial court's seven-year history of interaction with Appellant, the trial court also heard testimony from the victim, who stated that she was both physically and emotionally affected by Appellant's abusive conduct towards her. *Id*. at 25-26. The victim stated that because of the physical injuries Appellant inflicted on her, she was unable to go to work, suffered pain and scarring, and required facial reconstruction. *Id.* Emotionally, the victim stated that she cries a lot, her nerves are shaken, and she has had suicidal ideations. *Id.* at 26.

Our review of the certified record as a whole demonstrates that the trial court considered the appropriate factors and provided proper reasoning in

- 10 -

determining Appellant's sentences.[5]  The trial court heard from the victim concerning the physical and emotional abuse she suffered as a result of Appellant's conduct.  The trial court also detailed Appellant's seven-year history with the trial court, explaining the pattern of incidents between Appellant and the victim, the methods employed in an attempt to rehabilitate Appellant and to protect, and separate Appellant from, the victim, and the lack of success resulting from those efforts.  Therefore, Appellant's challenge to the discretionary aspects of his sentences based upon the claim the trial court failed to consider the factors under Section 9721(b) is without merit.

_____

[5] The trial court did not indicate that it reviewed a pre-sentence investigation report and the certified record does not contain such a report, which would give rise to the presumption that the trial court properly considered and weighed all relevant factors in imposing Appellant's sentences. *Commonwealth v. Nevels*, 203 A.3d 229, 248 (Pa. Super. 2019) (stating, "[w]hen a [trial] court has reviewed a pre[-]sentence investigation report, we presume that the [trial] court properly considered and weighed all relevant factors in fashioning the defendant's sentence" (citation omitted)). Nonetheless, it is apparent from the trial court's extensive knowledge of, and involvement with, Appellant that the trial court possessed sufficient information to substitute for a pre-sentence investigation report thereby allowing the trial court to fashion sentences that not only fit the crimes but also the person who committed them.  *Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 726 (Pa. Super. 2013) (stating that, "[w]hile case law does not require that the trial court order a pre-sentence investigation report under all circumstances, [case law does] appear to restrict the [trial] court's discretion to dispense with a [pre-sentence investigation report] to circumstances where the necessary information is provided by another source" (original brackets omitted)).

Appellant also claims that the trial court failed to consider certain mitigating factors in fashioning Appellant's sentences. Specifically, Appellant asserts that the trial court "failed to consider [Appellant's] success on pre-trial electronic home monitoring[,] as well as his outstanding work ethic." Appellant's Brief at 14.

Before we can address Appellant's claim, we must determine whether he raised a substantial question with his assertion that the trial court failed to consider certain mitigating factors.[6] "[A]n allegation that the [trial] court did

_____

[6] In order for this Court to determine if a substantial question exists, a Rule 2119(f) statement must specify: (1) where the sentence fails in relation to the sentencing guidelines; (2) what particular provision of the Sentencing Code it violates; and (3) what fundamental norm the sentence violates and manner in which it violates that norm. **Commonwealth v. Kiesel**, 854 A.2d 530, 532 (Pa. Super. 2004); **see also Commonwealth v. Mouzon**, 812 A.2d 617, 627 (Pa. 2002) (stating, "[an a]ppellant must, at a minimum, explain **specifically** why he thinks his sentences were improper" (emphasis added; citation omitted)).

Here, a review of Appellant's Rule 2119(f) statement demonstrates that Appellant failed to set forth a colorable argument that the sentences imposed were either inconsistent with a specific provision of the Sentencing Code or "contrary to the fundamental norms which underlie the sentencing process" based upon the trial court's failure to consider certain mitigating factors. **See** Appellant's Brief at 9-11. Nonetheless, the Commonwealth did not object to Appellant's omission in his Rule 2119(f) statement, and we are able to discern, based upon the argument set forth in Appellant's brief, that Appellant contends the trial court imposed an excessive sentence based upon its failure to consider certain mitigating factors. Therefore, we will consider whether a substantial question has been presented for our review. **Kiesel**, 854 A.2d at 532-533 (stating that, this Court is permitted to overlook an omission in a Rule 2119(f) statement and determine if a substantial question has been presented for review when the Commonwealth, as appellee, fails to object to the omission).

not consider certain mitigating factors does not raise a substantial question." *Commonwealth v. McNabb*, 819 A.2d 54, 57 (Pa. Super. 2003); *see also Commonwealth v. Johnson*, 961 A.2d 877, 880 (Pa. Super. 2008) (stating, "an allegation that a sentencing court failed to consider or did not adequately consider certain [mitigating] factors does not raise a substantial question that the sentence was inappropriate"), *appeal denied*, 968 A.2d 1280 (Pa. 2009). Because Appellant failed to raise a substantial question, we cannot now review the merits of his challenge to the discretionary aspects of his sentences based upon the claim that the trial court failed to consider, or to adequately consider, his work ethic and the effectiveness of electronic home monitoring prior to Appellant pleading guilty to the aforementioned crimes.[7]

_____

[7] Moreover, a review of the record demonstrates that the trial court did consider Appellant's work ethic and the effectiveness of electronic home monitor. In addition to permitting Appellant's counsel to read a letter from Appellant's current employer, the trial court noted that everywhere Appellant has worked as a chef, the employer and customers have "loved" Appellant, and Appellant was promoted due to his job performance. *Id.* at 19-20, 33 (stating, "I used to like to come [] to the [restaurant where Appellant worked] because I know you were in the kitchen and I knew the food was going to be good"). The trial court also remarked that, although Appellant contends he has been on electronic home monitoring and has not had contact with the victim for two months prior to his conviction and sentencing, the trial court could not "trust [Appellant] on electronic home monitoring" based upon his prior behavior while on electronic home monitoring. *Id.* at 33-34 (stating, "I've had you on electronic home monitoring before for two months and then, boom, everything falls apart). Therefore, we would find Appellant's challenge to the discretionary aspects of his sentences on the grounds the trial court failed to consider, or did not adequately consider, his work ethic or electronic home monitoring to be without merit.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/20/2022</u>